Steve. TANNER, Plaintiff–Appellant,

v.

Debra A. HEISE, individually and as Magistrate Judge, 1st Judicial District; Peter B. Wilson, Prosecutor for City of Bonners Ferry; Garth Tenney, individually and as a Deputy of the Boundary County Sheriff's Department; David Kramer; Harry Shearer, individually and as an employee of the Boundary County Sheriff's Department; Ron Navarro, individually and as an employee of the Boundary County Sheriff's Department; Jake Nagley, individually and as a Bonners Ferry City Police Officer; Don Hamilton, individually and as the Chief of Police for the City of Bonners Ferry, et al., Defendants–Appellees.

No. 87–4392.

United States Court of Appeals, Ninth Circuit.

Argued April 6, 1989.

Submitted April 24, 1989.

Decided June 27, 1989.

Steve Tanner, Bonners Ferry, Idaho, pro se.

Scott W. Reed, Coeur d'Alene, Idaho, for city defendants-appellees.

Michael Branstetter, Wallace, Idaho, for county defendants-appellees.

Before PREGERSON, BOOCHEVER and NOONAN, Circuit Judges.

PREGERSON, Circuit Judge:

Appellant Steve Tanner brought a section 1983 [1] civil rights action against vari-

---

1. Title 42 U.S.C. § 1983 provides, in relevant part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage ...

ous law enforcement officials from the City of Bonners Ferry and Boundary County in Idaho. Tanner also named as defendants First Judicial District Magistrate Debra Heise, Bonners Ferry City Prosecutor Peter Wilson, the City of Bonners Ferry, Boundary County, and the "First Judicial District." Tanner's action was based on alleged wrongs stemming from his arrest and incarceration for driving without a valid Idaho drivers license, and from a subsequent arrest for failure to comply with the terms of his conviction on the drivers license charge. Tanner alleged that the actions defendants, appellees here, undertook in enforcing Idaho's drivers license law violated his First Amendment right of religious freedom and other constitutional rights. At the heart of Tanner's complaint was his claim that law enforcement officers of Bonner's Ferry and Boundary County violated Tanner's First Amendment rights by arresting him in order to punish or deter Tanner's public profession of an unorthodox religious belief. Tanner's complaint sought damages under 42 U.S.C. § 1983, as well as declaratory and injunctive relief.

Appellees moved to dismiss the complaint. After conducting a hearing, the district court dismissed the action on November 4, 1987. *Tanner v. Heise*, 672 F.Supp. 1356 (D.Idaho 1987). Tanner brought this appeal, which is timely.

## I. BACKGROUND

Tanner adheres to a religious doctrine that rejects all secular legal authority. Tanner considers himself to be bound only to follow the law of his God. Consequently, Tanner did not carry with him a valid Idaho drivers license when he operated his automobile. In Tanner's view, carrying a drivers license issued by the state of Idaho would violate his religious beliefs.

On February 21, 1986, appellees Jake Nagley and David Kramer, police officers of the City of Bonners Ferry, stopped Tanner because he was driving with a burned-

out tail light. When Nagley and Kramer requested that Tanner show them his drivers license, Tanner informed them that as an ambassador of the Kingdom of God he was exempt from the requirements of Idaho's motor vehicle regulations. The officers gave Tanner a ticket for operating a vehicle without a drivers license, and told him that he could be arrested if he continued to drive without a license.

Tanner drove to an auto parts store, where he repaired his tail light. When he left the store, he was stopped by appellee Garth Tenney, a deputy for the Boundary County Sheriff's Department. Appellees Kramer and Nagley arrived at the scene shortly thereafter. Tenney arrested Tanner for operating a motor vehicle without a drivers license. Tanner was handcuffed and taken to the Boundary County Jail at 6:49 p.m. Over his protest that his status as God's ambassador gave him the right to decline to be photographed or fingerprinted, Tanner's photograph and fingerprints were taken by appellee Harry Shearer, Boundary County's jailer. Tanner was released from the County Jail sometime between 7:00 and 8:00 p.m.

The case based on Tanner's first ticket, issued by officers Nagley and Kramer, was designated M–8661. The case based on Tanner's second ticket, issued by deputy sheriff Tenney, was designated M–8662. The two cases were consolidated and trial was scheduled for May 22, 1986, before appellee Debra Heise, a magistrate for the First Judicial District for the state of Idaho in and for Boundary County.

On May 22, 1986, Magistrate Heise signed an order dismissing cases M–8661 and M–8662 due to the failure of a witness to appear. The caption of this order was subsequently altered to delete case M–8661 from the order; the altered order, which dismissed only M–8662, became part of the certified record when it was affixed with the stamp of the clerk of the district court

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

of Boundary County on September 26, 1986.

On May 22, 1986, jury trial was held on the remaining charge, M-8661. Tanner was found guilty and was sentenced to pay a fine of $300.00 and costs in the amount of $15.50. The judgment provided that the fine and costs would be suspended if Tanner obtained a valid drivers license within one week of the judgment, and filed proof thereof with the court.

On June 7, 1986, appellee Peter Wilson, city prosecutor for Bonners Ferry, filed a motion and affidavit for an order to show cause compelling Tanner to respond to the city's contention that he had failed to comply with the order and judgment of conviction in case M-8661. On June 26, 1986, Magistrate Heise issued an order to show cause directing Tanner to appear on July 8 and answer the city's contention. Tanner filed a notice of appeal of his state court conviction on July 1, 1986. On July 29, 1986, appellee Ronald Smith, the deputy sheriff assigned to serve the show cause order on Tanner, filed a "Sheriff's Affidavit on Return of Service," on which he stated that he had been unable to find or effect service on Tanner.

On July 17, 1986, Magistrate Heise issued a bench warrant for Tanner's arrest, based on his failure to comply with the terms of the order and judgment of conviction. Tanner was arrested pursuant to this warrant by officer Kramer and appellee Ron Navarro, a Boundary County jailer, on July 27, 1986. After posting $350.00 bail, Tanner was released later that day.

In his state court appeal of his conviction in case M-8661, Tanner argued that the conviction should be reversed because Magistrate Heise had dismissed both M-8661 and M-8662 on May 22, 1986. The court rejected this argument, concluding from the transcript of the May 22, 1986 hearing that Tanner had understood that Magistrate Heise had only dismissed case M-8662. The court acknowledged the error in the original written order dismissing the cases, but deemed it "a minor technicality [which] is not grounds for vacating the Judgment entered in this case...." Mem-

orandum Decision on Appeal, at 2. The court stated: "There is no evidence in the record that the Defendant was confused or prejudiced by the procedure, and, in fact, the Defendant thoroughly participated in the jury trial, making no objections to the Magistrate that he felt the instant case [M-8661] had been dismissed." *Id.*

Tanner filed the present action in the United States District Court for the District of Idaho, seeking damages under 42 U.S.C. § 1983 from the various city and county officers who were involved in the arrest incidents of February and July of 1986. Tanner alleged violations of his rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. Tanner also sought damages from appellees Heise and Wilson for their roles in the issuance of the bench warrant resulting in Tanner's July 27, 1986 arrest. In addition, Tanner named as defendants Ron Smith, Sheriff of Boundary County; Don Hamilton, Chief of Police for the City of Bonners Ferry; the "First Judicial District;" the City of Bonners Ferry; and Boundary County, alleging their formation of a policy and practice which allegedly violated Title 49 of the Idaho Code as it relates to arresting individuals for traffic violations. Last, Tanner sought injunctive relief restricting his arrests for traffic violations, and declaratory relief in the form of an affirmation of appellees' duty to recognize and secure Tanner's freedom of religious belief and practice.

Appellees moved to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On November 4, 1987, the district court granted appellees' motions and dismissed the action. The court held, first, that Magistrate Heise was immune from a suit for damages under the doctrine of judicial immunity. 672 F.Supp. at 1358-59. Likewise, the doctrine of prosecutorial immunity rendered appellee Wilson immune from suit. *Id.* Second, the court concluded that the various city and county officers involved in Tanner's arrests and detention did not violate any of Tanner's constitutional rights. *Id.* at 1359-60 & n. 1. Third, the court held that the city

and county were not subject to liability under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because Tanner had failed to provide evidence of a municipal "policy" depriving him of his constititional rights. Last, the court denied Tanner's request for declaratory and injunctive relief, holding that the State's important interest in maintaining public safety justified its enforcement of traffic regulations that interfered with Tanner's religious practices. 672 F.Supp. at 1360-61.

For the reasons discussed below, we affirm in part, reverse in part, and remand.

## II. STANDARD OF REVIEW

This court reviews de novo the granting of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 552 (9th Cir.1984). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986). *See also Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir.1985) (en banc) (in civil rights cases, where petitioner is pro se, the court has an obligation to construe the pleadings liberally and to afford petitioner any benefit of the doubt).

If " 'matters outside the pleading are presented to and not excluded by' " the district court, a motion to dismiss for failure to state a claim under Rule 12(b)(6) " 'shall be treated as one for summary judgment' " under Rule 56. *Fort Vancouver Plywood Co.,* 747 F.2d at 552 (quoting Rule 12(b)(6)).

■ In reviewing decisions of the district court, the court of appeals may affirm on any ground finding support in the record. *Smith v. Block,* 784 F.2d 993, 996 n. 4 (9th Cir.1986).

## III. DISCUSSION

### A. Damage Claim Against Magistrate Heise

In his complaint, Tanner alleged that Magistrate Heise conspired with appellee Wilson, the Bonners Ferry prosecutor, to issue an invalid bench warrant for Tanner's arrest. According to Tanner, Magistrate Heise issued the bench warrant in the absence of a sufficient affidavit or probable cause. Tanner alleged that the bench warrant was issued "without any ... authority for arrest contemplated by the statutes of the state of Idaho or rules of the court." Complaint at 11. As a result of the issuance of the warrant, Tanner allegedly suffered violations of his rights under the Fourth, Fifth, and Fourteenth Amendments.

■ The district court granted Magistrate Heise's motion to dismiss on the ground that Magistrate Heise enjoyed absolute immunity from damages actions. 672 F.Supp. at 1358–59. The court noted that the Supreme Court has recognized the defense of absolute immunity for " 'officials whose special functions or constitutional status requires complete protection from suit.' " *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982)). Judges lose their immunity from suit only when they act in a non-judicial manner or when they act in " 'clear absence of all jurisdiction.' " *Id.* at 1359 (quoting *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978)). They enjoy absolute immunity even when their actions are erroneous, malicious, or in excess of judicial authority. *Id.* (citing *Stump v. Sparkman,* 435 U.S. at 356–57, 98 S.Ct. at 1104–05). The district court upheld Magistrate Heise's claim of absolute judicial immunity on the ground that Tanner's complaint "contains no allegations that Judge Heise

was not performing judicial functions or that she was acting in the absence of jurisdiction." *Id.*

However, as described above, the complaint alleged that Magistrate Heise issued the bench warrant "without any ... authority for arrest...." Tanner now argues that this statement in fact constitutes an allegation that Magistrate Heise was acting in the absence of jurisdiction and thus precludes a determination of absolute judicial immunity on a Rule 12(b)(6) motion.

■ We need not decide whether Tanner's assertion constitutes an allegation that Magistrate Heise acted in the absence of jurisdiction, because we conclude that Tanner failed to allege facts sufficient to demonstrate the existence of a genuine issue of fact concerning the jurisdictional basis for Magistrate Heise's actions. Rule 12(b) provides that when, on a motion to dismiss under Rule 12(b)(6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." *See Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 552 (9th Cir.1984). On October 10, 1986, Magistrate Heise filed a motion to dismiss pursuant to Rule 12(b)(6), as well as a Memorandum in support of the motion. On October 21, 1987, Tanner submitted to the district court a signed "Declaration of Facts" which was subscribed by a notary of the state of Idaho. This document is the equivalent of an affidavit presenting "matters outside the pleading" for purposes of Rule 12(b). *See Fort Vancouver Plywood Co.,* 747 F.2d at 552 ("The pleadings in this case were accompanied by affidavits. We will therefore treat the motion to dismiss as one for summary judgment, and determine whether there is any genuine issue of material fact...."). Therefore, we will treat Magistrate Heise's motion to dismiss as a motion for summary judgment and apply the standard of Rule 56 of the Federal Rules of Civil Procedure in our de novo review of the Rule 12(b)(6) dismissal.

■ To withstand a motion for summary judgment, the nonmoving party must show

that there are " 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* —— U.S. ——, ——, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)) (emphasis deleted). If the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). The facts of the present case call for application of this test.

■ The factual context makes Tanner's claim that Magistrate Heise acted in the absence of jurisdiction implausible. Tanner argues that Magistrate Heise acted outside the scope of her jurisdiction because she issued a bench warrant based upon Tanner's failure to comply with the terms of a judgment of conviction in a case, M–8661, which Magistrate Heise had previously dismissed. According to Tanner, following his trial and conviction in case M–8661, he received in the mail an order signed by Magistrate Heise dismissing cases M–8662 *and* M–8661. This order, Tanner asserts, was the only one he ever received from Magistrate Heise after the trial. Moreover, Tanner points out, he was never served with the order to show cause concerning his apparent failure to comply with the terms of his conviction in case M–8661. Tanner asserts that he had no knowledge of the existence of the show cause order prior to his arrest on the bench warrant. Because the case had apparently been dismissed after his trial and conviction, Tanner implies, he was justified in believing that he was not required to comply with the terms of the conviction.

However, the evidence discussed above, *see supra* Part I, overwhelmingly supports

the district court's conclusion that Magistrate Heise did not dismiss case M–8661. As discussed above, the state court reviewing Tanner's conviction found that the transcript of the May 22, 1986 hearing demonstrated that Tanner understood that Magistrate Heise had dismissed only case M–8662. Tanner does not argue that he was unaware of the fact that Magistrate Heise intended to dismiss only M–8662 and not M–8661; nor does he contend that he was prejudiced or confused by his receipt of an order which apparently dismissed both cases. Tanner merely argues that Magistrate Heise's signing of an order which dismissed both cases deprived her of jurisdiction over a case, M–8661, in which a judgment of conviction had previously been rendered by a jury.[2] The implausibility of such a scenario is apparent.

Given the implausibility of the facts Tanner asserts, he must come forward with more persuasive evidence than would otherwise be necessary in order to defeat a motion for summary judgment. Tanner has failed to provide any such evidence. Thus, there is no basis for concluding that Magistrate Heise dismissed case M–8661. We therefore hold that Magistrate Heise acted within the scope of her jurisdiction and enjoys absolute immunity from Tanner's suit.

### B. Damage Claim Against Prosecutor Wilson

In his complaint, Tanner alleged that Peter Wilson, the attorney and prosecutor for Bonners Ferry, conspired with Magistrate Heise to issue an invalid bench warrant for Tanner's arrest. The warrant was issued on the basis of a motion and affidavit supplied by Wilson. As a result of the issuance of the warrant, Tanner allegedly suffered violations of his rights under the Fourth, Fifth, and Fourteenth Amendments.

■ The district court observed that "a prosecutor when acting in a judicial or quasi-judicial capacity is entitled to absolute immunity." 672 F.Supp. at 1359 (citing

Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). Noting that a prosecutor is immune from a civil suit for damages under section 1983 " 'in initiating a prosecution and in presenting the State's case,' " the court concluded that Wilson was absolutely immune from suit because he was being sued for instituting a prosecution for contempt of a court judgment. Id. (quoting Imbler v. Pachtman, 424 U.S. at 431, 96 S.Ct. at 995).

Tanner now argues that because Magistrate Heise acted outside of her jurisdiction in issuing the bench warrant, Wilson likewise acted outside of his authority in obtaining the warrant. As discussed above, however, Magistrate Heise acted within the scope of her jurisdiction when she issued the bench warrant. We hold that Wilson also acted within his authority and is entitled to absolute immunity for his actions in this case.

### C. Claims Against Arresting Officers

#### 1. *The February 21, 1986 Incidents*

Tanner's complaint alleged that appellees Tenney and Shearer, law enforcement officers for Boundary County, and appellees Kramer and Nagley, law enforcement officers for the City of Bonners Ferry, acted under color of state or local law to violate Tanner's constitutional rights in the course of the incidents of February 21, 1986, described above. Specifically, Tanner asserted that his Fourth and Ninth Amendment rights were violated by Kramer and Nagley's alleged use of threats to coerce Tanner to sign the traffic ticket; that his Fourth, Fifth, and Ninth Amendment rights were violated by Tenney, Kramer, and Nagley when Tenney arrested him for operating a vehicle without a drivers license rather than issuing him another ticket; that Tenney and Kramer "rearrested" Tanner despite their belief that Tanner would appear in court on the traffic charge, in violation of Tanner's Fourth, Fifth, and Fourteenth Amendment rights; and that Shearer violated Tanner's Fourth

---

**2.** At oral argument, Tanner conceded that he had received a copy of the "Judgment on Trial (Guilty)" form, which set forth Tanner's sentence, on May 22, 1986 (the day of the trial).

and Fifth Amendment rights by photographing and fingerprinting Tanner over Tanner's objections.

The district court held that none of the Bonners Ferry and Boundary County police officers violated Tanner's constitutional rights. 672 F.Supp. at 1359. Rather, the court concluded, the actions of these appellees fully complied with the terms of constitutionally valid state statutes. *Id.* The court observed that under Idaho law, specifically Idaho Code § 49–1104, it is a misdemeanor to drive a vehicle without a valid drivers license. *Id.* Under Idaho Code § 49–1111, an officer has the option of taking a person before a magistrate, rather than giving him a traffic citation, " '[w]hen the person does not furnish satisfactory evidence of identity or when the officer has reasonable and probable grounds to believe the person will disregard a written promise to appear in court.' " *Id.* (quoting Idaho Code § 49–1111 (1980 & Supp.1987)). The court believed that the facts showed that when Tenney arrested Tanner on February 21, 1986, Tenney had "reasonable grounds to believe that [Tanner] would disregard a written promise to appear in court." *Id.* As support for this conclusion, the court noted that earlier that evening Tanner had informed officers Kramer and Nagley that he had no intention of obeying Idaho's motor vehicle laws, and then demonstrated this intention by continuing to drive after the officers had warned him not to. *Id.* at 1359–60. Thus, the court concluded, appellees complied with section 49–1111 of the Idaho Code. *Id.* at 1360.

■ We are not convinced by the district court's reasoning. Tanner's statement to officers Kramer and Nagley that as an ambassador of the Kingdom of God he was not required to carry a drivers license, and his failure to obey these officers' previous admonition against driving without a drivers license, did not demonstrate the existence of either basis for arrest of traffic

violators provided for in section 49–1111. The statement and continued driving did not constitute a failure to "furnish satisfactory evidence of identity," nor did they give Tenney "reasonable and probable grounds to believe [Tanner would] disregard a written promise to appear in court." Idaho Code § 49–1111. Moreover, in his complaint Tanner alleged that the officers told Tanner that they believed he would appear in court. Complaint at 9. In their answers, appellees denied this allegation. This dispute over a material fact, and the lack of evidence to support a reasonable belief that Tanner would not appear in court, preclude summary disposition of the issue of appellees' compliance with Idaho Code § 49–1111.

In appellees' supplemental briefing, however, they argue that the arrest was valid not only under section 49–1111 but also under sections 49–236 and 19–603 of the Idaho Code. Section 49–236 makes it a misdemeanor to drive without a valid drivers license;[3] section 19–603 authorizes a peace officer to make an arrest without a warrant for a public offense committed or attempted in his presence.[4]

■ The question, then, is whether § 49–1111, which provides the authority for arrests in cases of traffic violations, narrows the broader arrest authority contained in § 19–603. We conclude that § 49–1111 modifies the general authority to arrest for a misdemeanor. Therefore, Tanner's arrest could not be justified under state law unless the officers complied with § 49–1111. Accordingly, on remand the district court should determine whether the officers had reasonable grounds to believe that Tanner would disregard a written promise to appear in court.

■ However, even if the district court determines that the officers complied with the requirements of state law when they arrested Tanner, the court must still ad-

---

3. Section 49–1104 provides in relevant part:
   It is a misdemeanor for any person to violate any of the provisions of this title except the provisions of Chapters 6 through 9, unless otherwise specifically provided.

4. Section 19–603 provides in relevant part:
   A peace officer may, ... without a warrant, arrest a person:
   (1) for a public offense committed or attempted in his presence.

dress Tanner's further allegation that the officers conspired together to violate Tanner's constitutional rights by effecting his arrest.[5] In his complaint, Tanner alleged that Tenney, Kramer, Nagley, and other unknown and unnamed defendants "conspired together under the color of law ... to falsely arrest Plaintiff." Complaint at 8. In his opening brief, Tanner elaborates on this claim as follows:

Tanner proceeded [from] the scene of the first stop [by officers Nagley and Kramer] to an auto parts store where he repaired the tail light. He then pulled onto the road way, noticing the lights of a parked Boundary County Sheriff's car ... across the roadway. Tanner was immediately 'pulled over,' this time by Defendant Tenney, a deputy for Boundary County. Within seconds Kramer and Nagley and other unknown men in like uniforms (five or six in all and three 'patrol cars') were on the scene in what was obviously a coordinated, pre-planned show of overwhelming force intended to instill terror. After a short conversation [with] Tenney, Kramer, Nagley and other unknown persons, Tanner was arrested and hand-cuffed. There was no questioning of Tanner's identity, no issuing of a ticket and no requesting a written promise to appear. Tenney, Kramer, Nagley and other unnamed persons made this traffic stop for no other reason than to arrest Tanner.

Brief for Appellant at 4. Tanner contends that the "actual reason" for his arrest was not any belief by the officers that Tanner would not appear in court, but rather the officers' wish to "punish[ ] him for daring to express his religion in a public manner...." Id. at 10.

In his reply brief, Tanner further elaborates his claim:

[Tanner] was not arrested for driving without a license but was arrested to punish, scare, and intimidate him. Defendants Kramer and Nagley [initially] accepted a signed traffic ticket and believed [Tanner] would appear [in court] at the time set. Then these same men 'staked out' [Tanner] while he repaired the tail lights, [and] proceeded to surround [Tanner] with squad cars and five to six armed men. These included Kramer and Nagley who had approximately 40 minutes earlier identified [Tanner] and believed he would appear in their court room. At this 'stake out' there was no question as to [Tanner's] identity or as to his appearing in the court.

Reply Brief for Appellant at 5–6.

■ We believe that the district court erred in not addressing Tanner's allegation that the officers planned and executed Tanner's arrest for the purpose of deterring or punishing his First Amendment-protected religious expression. This allegation states a claim for relief under section 1983 and, if meritorious, is not one for which the officers would enjoy the qualified immunity accorded to government officials under *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

■ Because the record does not provide an adequate factual basis for resolu-

---

5. Tanner's complaint alleged that the "conspiracy" to violate his constitutional rights deprived him of his rights under the equal protection clause of the Fourteenth Amendment as well as his Fourth and Fifth Amendment rights. Because Tanner has alleged an equal protection violation, the officers' mere compliance with the procedural requisites of state law would not shield them from liability under section 1983 if Tanner can show that the officers were motivated by the desire to harass Tanner for his reli-

gious beliefs when they arrested him. That is, if the officers would not have arrested Tanner but for their animus against Tanner's particular religious beliefs and expression, Tanner may prevail regardless of the procedural propriety of the arrest under state law. *See, e.g., Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886); *see also Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316–17 (9th Cir.1989).

tion of this issue,[6] we reverse the district court's dismissal as to appellees Tenney, Kramer and Nagley and remand to the district court for further proceedings.[7]

### 2. *The July 27, 1986 Incident*

■ In his complaint Tanner alleged that appellees Kramer and Navarro arrested Tanner on the basis of a bench warrant allegedly void on its face and thereby "deprived [Tanner] of his liberty and property under the color of law." Complaint at 12–13. This allegation of course depends on Tanner's claim that Magistrate Heise acted outside the scope of her jurisdiction when she issued the bench warrant. As we explained above, however, Magistrate Heise acted within her jurisdiction in issuing the bench warrant. Tanner is therefore unable to state a claim for relief against Kramer or Navarro based on their actions taken pursuant to that valid warrant.

### D. Damage Claims Against City of Bonners Ferry, Boundary County, "First Judicial District," and Hamilton, Smith and Kramer for Alleged Unconstitutional Policies

In his complaint Tanner alleged that Ron Smith, as Sheriff of Boundary County; Don Hamilton, as Chief of Police for the City of Bonners Ferry, and Dave Kramer, as Assistant Chief of Police for Bonners Ferry, were responsible for unconstitutional County and City policies of arresting traffic violators rather than issuing them tickets. Complaint at 13–14. Tanner also alleged that Smith, Hamilton and Kramer failed properly to supervise, train or instruct the police officers under their authority, resulting in violations of Tanner's constitutional rights. *Id.* In addition, Tanner alleged that "the First Judicial District, and/or County of Boundary, and/or the City of Bonners Ferry" were responsible for the said unconstitutional policies. *Id.* at 14–15. Tanner alleged that the City, County, and "First Judicial District" had also failed properly to supervise, train, or instruct the officers under their authority. *Id.*

■ The district court rejected these claims. According to the district court, a single incident of unconstitutional activity is not sufficient to impose liability under section 1983 unless proof of that single incident includes proof that it was caused by an underlying unconstitutional policy. 672 F.Supp. at 1360 (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).[8] The court therefore

---

6. For example, appellee Boundary County admits that:
   > [T]he record is not clear as to how Sheriff's Deputy Tenney became aware of the fact [that] Mr. Tanner had no drivers license. It is obvious that he [Tenney] was aware of that fact. It can be inferred by the allegations of conspiracy that Nagley or Kramer told Tenney of the prior traffic stop.

   Supplementary Brief of Boundary County Appellees at 2.

7. We affirm the dismissal of Tanner's claim against appellee Shearer. Shearer did not violate Tanner's Fourth and Fifth Amendment rights by obtaining his fingerprints and photograph in the course of a routine booking procedure.

8. The district court erred in its characterization of Supreme Court precedent. The portion of the *Tuttle* opinion from which the district court concluded that the Supreme Court had "made clear" that a single incident of unconstitutional activity is not sufficient to impose liability under section 1983 unless proof of that incident demonstrates that it was caused by an underlying unconstitutional policy was joined only by a plurality of the Justices. Justice Rehnquist, writing for four Justices, wrote: "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* [*v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ], unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle,* 471 U.S. at 823–24, 105 S.Ct. at 2436–37 (Rehnquist, J., joined by Burger, C.J., White, and O'Connor, JJ.). In a subsequent case, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), discussed *infra,* the Court was unable to achieve a majority position either approving or disapproving this language. *See id.* at 482 n. 11, 106 S.Ct. at 1299 n. 11 (plurality portion of opinion); *id.* at 487, 106 S.Ct. at 1302 (Stevens, J., concurring in part and concurring in the judgment); *id.* at 499, 106 S.Ct. at 1308 (Powell, J., dissenting). *See also City of Canton v. Harris,* — U.S. ——, 109 S.Ct. 1197, 1203 & n. 4, 103 L.Ed.2d 412 (1989) (noting that municipal liability inquiry under section 1983 has left the Court "deeply divided in a series of cases that have followed *Monell,*" including *City of St. Louis v.*

held that even if the actions of February 21, 1986 violated the state law governing traffic violations and thereby violated Tanner's constitutional rights, the single incident of arrest was insufficient to demonstrate an established policy of arrests for misdemeanor traffic offenses. *Id.*

Municipalities, as well as municipal officials sued in their official capacity, are subject to liability under § 1983 when their policies subject an individual to the deprivation of any right guaranteed to him by the Constitution. *Monell v. Dep't of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). A municipality or governmental entity cannot be found liable under section 1983 on a *respondeat superior* theory; such liability can be imposed only for injuries inflicted pursuant to an official governmental policy. *See City of Canton v. Harris,* —— U.S. ——, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. Moreover, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).

> [A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government

"policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.

*Id.* at 481, 106 S.Ct. at 1299. *See also Bateson v. Geisse,* 857 F.2d 1300, 1303–04 (9th Cir.1988); *Collins v. City of San Diego,* 841 F.2d 337, 341 (9th Cir.1988) (*Pembaur* makes clear that although municipal liability may be imposed for a single decision or action by a municipal policymaker, municipal liability attaches only when the decisionmaker possesses "final authority" to establish municipal policy).

Because the district court erroneously believed that a "single incident" constituting a deprivation of Tanner's constitutional rights would be "clearly insufficient" to demonstrate an established policy of arrests for misdemeanor traffic offenses, 672 F.Supp. at 1360, the court did not determine whether appellees Smith, Hamilton and Kramer, alleged by Tanner to be responsible for a policy of arrests for misdemeanor traffic offenses, had in fact established such a policy or possessed "final authority" to do so.[9]

In *City of Canton v. Harris,* the Supreme Court rejected the argument that a municipality can be found liable under section 1983 only where the policy in question is itself unconstitutional. 109 S.Ct. at 1203–04. Instead, the Court held that a claim that a concededly valid municipal policy was unconstitutionally applied by a municipal employee states a claim under section 1983 if the plaintiff alleges that the employee was not adequately trained and that the constitutional wrong was caused by that failure to train. *Id.* at 1204. To prevail on such a claim, a plaintiff must

---

*Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed. 2d 107 (1988), and *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

9. In *Pembaur,* Justice Brennan's plurality opinion stated that "whether an official has[s] final policymaking authority is a question of state law." 475 U.S. at 483, 106 S.Ct. at 1300 (plurality portion of opinion). Subsequently, as we observed in *Hammond v. County of Madera,* 859 F.2d 797, 802 n. 1 (9th Cir.1988), the plurality

and concurrence in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), differed as to whether the identification of "policymakers" is purely a question of state law or a question of fact. We leave it to the district court to determine on remand how and whether Tanner can prove that Smith, Hamilton and Kramer acted as policymakers for the city and county in the circumstances of this case.

prove that the inadequacy of training amounted to "deliberate indifference" to the rights of persons with whom the employee comes into contact. *Id.*

■ We need not decide, therefore, whether the alleged municipal policy of arresting persons for traffic violations is "unconstitutional." Rather, the question is whether Tanner can prove that appellees, as Tanner alleges, failed properly to supervise, train or instruct the police officers under their authority; whether this failure to train resulted in the violation of Tanner's constitutional rights, *see City of Canton v. Harris*, 109 S.Ct. at 1205; and whether the alleged failure to train represents "deliberate indifference to the rights of persons with whom the [officers] come into contact." *Id.* at 1204. The district court did not address these questions. Therefore, we reverse the district court's dismissal of Tanner's action with respect to these appellees,[10] and remand for further proceedings on this issue.

### E. Declaratory and Injunctive Relief

The district court denied Tanner's request for declaratory and injunctive relief without determining whether Tenney, Kramer and Nagley were motivated, as Tanner alleged, by a wish to harass Tanner for his religious beliefs. Because further fact-finding is required to resolve this question, we reverse the district court's denial of Tanner's request for declaratory and injunctive relief and remand for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

NOONAN, Circuit Judge, concurring in part and dissenting in part:

I concur in all of the court's opinion except Part C.1, in which the court decides to reverse the district court's dismissal of Tanner's claims against the arresting officers. I believe that the officers complied with the requirements of state law and did not conspire to violate Tanner's constitutional rights by arresting him.

The facts provided the officers with "reasonable and probable grounds to believe that [Tanner would] disregard a written promise to appear in court." Idaho Code § 49–1111 (1980 & Supp.1987). When initially stopped for a burned-out tail light, Tanner informed the officers that he was an ambassador of the Kingdom of God and as such was exempt from the requirements of Idaho's motor vehicle laws. His self-proclaimed immunity justified in his mind his operation of a vehicle without a tail light and without a driver's license. This vision of his responsibilities gave the officers good reason to believe that he would just as cavalierly disobey the traffic citation to appear in court. By word and deed Tanner showed that he considered himself above mundane municipal law.

I am likewise unconvinced by the majority's analysis of the conspiracy issue. Tanner's unorthodoxy, his contempt for the law, must have created some concern about how he would react when arrested. A man under the belief that he is above the law may resist arrest. In my view, the police acted prudently and in a manner designed to discourage and prevent any outburst.

---

10. We affirm the district court's dismissal of the "First Judicial District," because this is not an

entity amenable to suit.