

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-2009

# Holman v. York

Precedential or Non-Precedential: Precedential

Docket No. 07-4438

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Holman v. York" (2009). *2009 Decisions.* Paper 1423.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1423

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4438
(Consolidated with Nos. 07-4437 and 07-4439)
_____

JOHN R. HOLMAN,
Appellant

v.

CITY OF YORK, PENNSYLVANIA;
POLICE COMMISSIONER MARK L. WHITMAN,
in his official capacity;
OFFICER KOLTANOVICH, York Police Department,
in his official and individual capacities
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 06-CV-02300)
District Judge: Honorable John E. Jones, III
_____

Argued October 23, 2008

Before:  RENDELL, and SMITH, <u>Circuit Judges</u>,
and POLLAK,* <u>District Judge</u>.

(Filed: April 27 2009)

———————

Dennis E. Boyle, Esq.
Suite 200
4660 Trindle Road
Camp Hill, PA   17011-0000

Randall L. Wenger, Esq.  **[ARGUED]**
Suite 200
4660 Trindle Road
Camp hill, PA 17011
 *Counsel for Appellants*
 *John McTernan; John R. Holman; Edward D. Snell*

Donald B. Hoyt, Esq.
Blakey, Yost, Bupp & Rausch
17 East Market Street
York, PA   17401-0000

—————————

    **\*Honorable Louis H. Pollak, Senior Judge of the United
States District Court for the Eastern District of Pennsylvania,
sitting by designation.

James D. Young, Esq.   **[ARGUED]**
Lavery, Faherty, Young & Patterson
225 Market Street, Suite 304
P. O. Box 1245
Harrisburg, PA   17108-0000
 *Counsel for Appellees*
 *City of York, Pennsylvania;*
 *Police Commissioner Mark L. Whitman, in His Official*
*Capacity;  and Officer Koltanovich*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

Appellant John Holman appeals from the District Court's grant of summary judgment and dismissal of his *Monell* claims for municipal liability in this action pursuant to 42 U.S.C. § 1983.  Appellant John Holman is a pro-life advocate who regularly speaks to pregnant women as they enter the medical clinic (hereinafter "Clinic") of Planned Parenthood of Central Pennsylvania ("Planned Parenthood") in York, Pennsylvania. Officer Koltunovich,[1] a member of the City of York police

_____

[1] The caption in the case filed in the District Court identifies the Defendant as "Officer Koltanovich." The correct spelling of Defendant's surname is "Koltunovich," as reflected in his Unsworn Declaration. H.A. 294-97.

3

department, is one of several officers assigned to overtime detail at the Clinic under a contract between Planned Parenthood and the City. McTernan Appendix ("M.A.") 182. To dissuade pregnant women from undergoing an abortion, Holman emphasizes the sanctity of the fetus, distributes pro-life literature, and discusses alternatives to, and the health risks of, abortion. Holman Appendix ("H.A.") 356-57. Holman's activities emanate from deeply rooted Christian religious beliefs. H.A. 355.

This case and those of two other protesters at the Clinic (*McTernan v. City of York*, No. 07-4437; and *Snell v. City of York*, No. 07-4439) were consolidated for oral argument. Each of the three appellants sued individually complaining of restrictions on his First Amendment rights of speech, assembly, and religious expression. Additionally, Holman and Snell complain that their arrests for activity outside the Clinic violated their Fourth Amendment rights. While certain facts as stated in the three appeals are similar, the claims of each were separately asserted in, and decided by, the District Court. We therefore write separately on each case, and we note that the analysis as it relates to Holman differs from the others somewhat, based on the nature of the government conduct at issue.

The Clinic and its environs are described fully in our Opinion in *McTernan v. City of York,* No. 07-4437, filed concurrently herewith, and that description will not be repeated

4

here.[2]

On December 7, 2005, Officer Koltunovich was working at the Clinic. That morning, as Holman was walking through Rose Alley towards South Beaver Street, Officer Koltunovich approached, positioning himself "toe to toe" with Holman. H.A. 193, 358.[3] Officer Koltunovich then ordered Holman to "get out of my space" and "verbally assault[ed]" him. H.A. 358, 193. Officer Koltunovich returned to the intersection of Rose Alley and South Beaver Street, after which Holman continued to advocate in the alley, without any objection by Officer Koltunovich. H.A. 190, 358, 362.[4] At some point on the morning of December 7, 2005, Officer Koltunovich cautioned Holman that walking in Rose Alley could be hazardous. H.A. 200, 278. However, Holman testified that Officer Koltunovich did not forbid his standing in the alley on that day or at any time previously, H.A. 188-89, nor is there evidence that Officer

---

[2] The basis of our jurisdiction, and the standard of review applicable to the Court's grant of summary judgment and dismissal of certain counts of the complaint, are set forth in *McTernan v. City of York,* No. 07-4437, which we expressly incorporate herein.

[3] These facts, derived from Holman's deposition testimony and sworn affidavit, are uncontested unless indicated to the contrary.

[4] The appendix reference at page 362, a DVD proffered by Holman, depicts his conversation with Officer Koltunovich.

5

Koltunovich instructed other protesters to stay out of Rose Alley on that day. Snell Appendix (S.A.) 175.

Shortly thereafter, the two conversed again, this time near the intersection of Rose Alley and South Beaver Street. Holman was standing at the edge of the street near the Clinic's front lot, when a tractor-trailer made a "wide, sweeping turn" into the alley from South Beaver Street. H.A. 283, 358, 361. To avoid the truck, Holman stepped into the Planned Parenthood parking lot; Officer Koltunovich immediately arrested him for trespass. H.A. 239, 290. The charge for defiant trespass was dismissed by the Magisterial District Judge.[5] H.A. 229.

Officer Koltunovich had previously warned Holman that Planned Parenthood prohibited his entering the front lot, which was its private property. H.A. 166-67, 173, 267-69, 296. Holman acknowledged that he was aware that he was entering Planned Parenthood property when he stepped onto the elevated curb to avoid the truck. H.A. 239, 267-270, 272.

Holman and Officer Koltunovich offered conflicting

---

[5] The Commonwealth amended the charge from a summary offense to a misdemeanor. Justice Haskell dismissed the charge without explicitly stating his reason for doing so. His comments at the hearing suggest either of two possibilities: the prosecutor's failure to meet the *prima facie* elements of the offense, H.A. 289, or the applicability of an affirmative defense. H.A. 288.

testimony as to the speed of the truck, the imminence of the danger presented, and Holman's alternatives to avoid a collision. Holman testified that the truck was traveling at an unsafe speed, and maintains that stepping briefly onto Planned Parenthood property was his sole alternative to avoid a collision. Appellant's Br. at 32; H.A. 198. Officer Koltunovich, conversely, testified that the truck, which came to "practically a dead stop," did not pose an "imminent danger" or present a "close call." H.A. 239-40, 279. Officer Koltunovich also testified that Holman could have avoided a collision by walking farther down the alley, which was clear of traffic. H.A. 274-75, 277.

As with McTernan and Snell, Holman asserts First Amendment claims of free speech, assembly,[6] and religious expression.[7] Unlike McTernan and Snell, however, Holman fails to demonstrate any restriction on his First Amendment rights. Holman acknowledges that he was granted unfettered access to the alley, and that he exercised his First Amendment

---

[6] Holman references his claim of right to assembly but does not set forth a separate argument in his brief. For purposes of our analysis, we conclude that this claim is encompassed in his free speech claim.

[7] The District Court granted summary judgment in favor of Officer Koltunovich on all of Holman's First Amendment claims.

7

rights there, without objection by Officer Koltunovich.[8] To the extent that Holman does assert a restriction on his free speech rights, it is based on his arrest for trespass. McTernan contends that his arrest was motivated by a desire to suppress his pro-life views, and chilled his First Amendment activity in the alley.[9] We disagree. Although we are somewhat troubled by Holman's arrest for a *de minimis* offense, no evidence suggests that Officer Koltunovich acted based on an improper motive, or that the arrest would "deter a person of ordinary firmness from the exercise of his First Amendment rights."[10] *See Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000); *Bennett v. Hendrix*,

---

[8] Finding that Officer Koltunovich prohibited Holman from lingering in Rose Alley, the District Court analyzed the constitutionality of such a restriction; we need not do so, as we conclude that Holman's use of the alley was not meaningfully curtailed.

[9] *See, e.g.*, *Tanner v. Heise*, 879 F.2d 572, 580 n.5 (9th Cir. 1989) (holding that an arrest motivated by desire to suppress religiously-motivated expression violates the First Amendment, regardless of the procedural propriety of the arrest); *Bailey v. Andrews*, 811 F.2d 366, 372 (7th Cir. 1987) (noting that arrest motivated by desire to suppress a suspect's speech is unconstitutional, notwithstanding the existence of probable cause for the arrest).

[10] Holman acknowledges that, undaunted by Officer Koltunovich's "verbal assault," he continued to advocate in the alley. Appellant's Br. at 10.

423 F.3d 1247, 1254 (11th Cir. 2005). To the contrary, Officer Koltunovich granted Holman unfettered access to the alley, permitting him to protest there without objection. Holman was only arrested when he trespassed on Planned Parenthood property, after repeated warnings that the lot was private property. Hence, Holman's "chill" argument – that he reasonably feared police reprisal for exercising his First Amendment rights – is unfounded. Holman had no reason to fear police interference with his advocacy in the alley, provided he respected Planned Parenthood's property rights. Thus, Holman fails to demonstrate a cognizable First Amendment violation.

Holman also challenges his arrest on Fourth Amendment grounds. He contends that his arrest for trespass was not supported by probable cause, because an affirmative defense – the defense of necessity – clearly applied. Specifically, Holman contends that stepping onto the private parking lot was necessary to avoid colliding with a truck that had just turned into the alley. He asserts that "the trespass statute is not applicable when there exists the defense of necessity to prevent Mr. Holman's own bodily injury." Appellant's Br. at 24; *see* 18 Pa.C.S. § 503(a).

Trespass under 18 Pa.C.S. § 3503(b)(1)(i) requires proof that the defendant, "knowing that he is not licensed or privileged to do so, . . . enters or remains in any place as to which notice against trespass is given by . . . actual communication to the actor." The District Court concluded that Holman's arrest was lawful for three reasons.

9

First, the District Court noted that Holman all but conceded that Officer Koltunovich had a reasonable basis for concluding that the elements of the charged offense were met. The Court reasoned that Officer Koltunovich had previously advised Holman that the front parking lot was private property owned or leased by Planned Parenthood, and that Planned Parenthood did not want Holman trespassing there. Further, Holman admitted that, based on these instructions and his approximately a dozen trips to the facility, he knew which locations were private property and which locations were public, and was aware that the elevated curb onto which he stepped was private property. H.A. 31, 166-67, 239, 267-270, 272.

Second, citing *Sands v. McKormick*, 502 F.3d 263, 269 (3d Cir. 2007), the District Court held that, as a matter of law, probable cause exists when an officer reasonably believes that the elements of the charged offense have been met, regardless of whether an affirmative defense appears to apply: "First, justification or necessity is an affirmative defense. In making the 'fundamentally . . . factual analysis . . . at the scene,' such affirmative legal defenses are not a relevant consideration in an officer's determination of probable cause." H.A. 32. Thus, the District Court reasoned that Officer Koltunovich had probable cause to arrest Holman, independent of affirmative defenses that Officer Koltunovich knew, or should have known, exonerated Holman.

Third, the District Court found that, even assuming, *arguendo*, that an arresting officer must consider the applicability of affirmative defenses in determining whether probable cause exists, the necessity defense likely did not apply.

10

Indeed, Holman, previously apprised of the danger posed by vehicular traffic, could have anticipated that trespassing on Planned Parenthood property would be necessary to avoid vehicles traveling through the alley. Further, it was not necessary for Holman to protest in the alley because numerous, safer locations existed from which to convey his pro-life views. The District Court analogized the case before it to *Northeast Women's Ctr. v. McMonagle*, 868 F.2d 1342, 1352 (3d Cir. 1989), where we determined that protesters trespassing at an abortion clinic were not entitled to a necessity defense, because the protesters possessed lawful alternatives, other than trespassing on clinic property, to prevent the harm identified—the performance of abortions. We reasoned that protesters could have voiced their pro-life views equally effectively from the public sidewalks around the clinic. *Id*. Here, the District Court observed, similarly, that Holman could have safely exercised his First Amendment rights on the public sidewalks around the Clinic, thereby avoiding the hazards of the alley.

Although Holman concedes that all elements of a *prima facie* case for trespass were met, he articulates two objections to the District Court's determination of probable cause. First, Holman argues that *Sands* did not make all affirmative defenses irrelevant to the probable cause determination. Rather, *Sands* merely relieved officers of the obligation to inquire about the single affirmative defense at issue there—the statute of limitations. We emphasized in *Sands* that police officers, who lack legal training, could not reasonably be expected to calculate the applicable tolling period. Holman argues that trespass is different, because no legal training is required for police to

11

determine whether a defendant's trespass is justified by necessity. Unlike the statute of limitations, the necessity defense has straightforward elements, and an officer's immediate observations are often sufficient to determine whether its requirements are met. Thus, he urges, neither the holding nor the reasoning of *Sands* categorically relieves an arresting officer of the duty to determine whether an affirmative defense applies to the defendant's conduct.

Second, Holman distinguishes *McMonagle* from the case before us. Unlike the defendants in *McMonagle*, who could protest abortions without trespassing on clinic property, Holman lacked lawful alternatives to avoid the specific harm that he confronted—being struck by an approaching truck. He contends that stepping onto the Planned Parenthood parking lot was his sole option to avoid an accident.

We cannot conduct an informed inquiry into this issue without noting that, in another case, *Radich v. Goode,* 886 F.2d 1391, 1396 (3d Cir. 1989) (not cited by the parties), we assumed for the sake of argument, without deciding, that the existence of an affirmative defense was relevant to the determination of probable cause. There, we considered whether probable cause existed to arrest a defendant for defiant trespass, where the defendant pled, as an affirmative defense, that (1) the premises were open to the public, and (2) the condition imposed by the property owners was unlawful. 18 Pa. C.S. § 3503. Rather than holding that the proffered defense was irrelevant to the officer's determination of probable cause as a matter of law, we assumed *arguendo* that the applicability of the defense bore on the probable cause determination. *Radich*, 886 F.2d at 1396. We

12

then framed the dispositive inquiry as whether an officer, "acting reasonably . . . under the facts and circumstances" known to him, would conclude that the affirmative defense applied. *Id.* at 1396-97. If the answer was yes, then probable cause did not exist. There, because the defendant could not prove that a reasonable officer, based on the facts before him, would believe that the condition imposed by the property owners was unlawful, the defendant's arrest was supported by probable cause. *Id*. at 1398.

However, *Radich* is distinguishable, because the two affirmative defenses urged by the defendant were specifically included in the statute setting forth the elements of the crime. That is, the statute specifically stated that the proscribed conduct was not criminal if these two aspects were present. Here, that is not the case. The "necessity" defense urged here appears in a separate section of the Pennsylvania criminal code, § 503, defining the general principles of justification. Significantly, § 503 is not explicitly referenced in § 3503(b)(1), which details the elements of defiant trespass.

In *Sands,* we concluded that the affirmative defense of the statute of limitations need not be considered by an arresting officer in determining probable cause. We suggested that it was a "faulty premise" to urge that affirmative defenses, such as the statute of limitations, are necessarily relevant at the time a police officer files charges. 502 F.3d at 269. Rather, we indicated that generally "affirmative defenses are to be ruled upon by a court of competent jurisdiction." *Id*. We bolstered our reasoning in *Sands* by noting that statute of limitations is not a "clear cut" matter in a criminal prosecution. *Id*. Here, similarly, whether

Holman's movement in a certain direction, and onto private property, was "necessary" is not clear cut and is essentially an issue of fact. Indeed, whereas Holman contends that the truck was approaching at an "unsafe" speed, forcing him to step onto the Planned Parenthood parking lot to avoid a collision, H.A. 198, 229, 278, Officer Koltunovich maintains that the truck was "practically at a dead-stop," and that Holman could have avoided an accident by simply walking farther down the alley. H.A. 239-40, 274-75, 278. Requiring Officer Koltunovich to resolve these questions, and painstakingly to weigh possible defenses, would be impractical, particularly given the rapidity with which the events transpired here.

Just as the statute of limitations in *Sands* requires an analysis of legal considerations that should not concern an arresting officer, the "necessity" defense urged here requires an officer to resolve equally daunting issues. An arresting officer would need to examine countless factual permutations to determine the "necessity" of specific conduct at a given moment in time. We do not endorse the District Court's statement that affirmative defenses are "not a relevant consideration" – as we have never so held – but we do conclude that, here, the defense of necessity need not have been considered in the assessment of probable cause for arrest for trespass at the scene. Because Officer Koltunovich had probable cause to arrest Holman for trespass, his Fourth Amendment claim fails.[11]

---

[11] We also reject Holman's alternative argument – that Officer Koltunovich used excessive force. Holman contends, "When an arrest is illegal to begin with, any force used is excessive."

Finding no violation of Holman's First and Fourth Amendment rights, we will AFFIRM the grant of summary judgment. Also, for the reasons set forth in *McTernan v. City of York*, No. 07-4437, which we expressly incorporate herein, we will AFFIRM the District Court's order dismissing Holman's municipal liability claims against the City of York and his official capacity claims against Officer Koltunovich, Mayor Brenner, and Police Commissioner Whitman, as the allegations in Holman's complaint mirror those in McTernan's.[12]

---

Appellant's Br. at 32. Holman's excessive force claim hinges, therefore, on the legality of the initial arrest. Because we conclude that Officer Koltunovich had probable cause to arrest Holman for trespass, we reject his derivative claim for excessive force.

[12] Holman's municipal liability claims would have inevitably failed at the summary judgment stage, since we conclude that no constitutional deprivation occurred.

15