NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1903
_____

CHRISTOPHER DAVIS

v.

STEPHEN B. MALITZKI, JR., Individually & In His Official Capacity As
A Detective In The Bethlehem Township Police Department;
TOWNSHIP OF BETHLEHEM

STEPHEN B. MALITZKI, JR.,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 09-cv-00739
(Honorable U.S. Magistrate Judge Henry S. Perkin)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 10, 2011

Before: SCIRICA, SMITH and JORDAN, *Circuit Judges*.

(Filed: November 17, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

This case stems from an action brought by Christopher Davis under 42 U.S.C. §

1983 against Stephen B. Malitzki, Jr., a detective for the Bethlehem Township Police

Department. Davis sued Malitzki in his individual capacity, alleging Malitzki violated his rights under the Fourth and Fourteenth Amendments by arresting him without probable cause and by singling him out for prosecution on account of his race, respectively.[1] Detective Malitzki moved for summary judgment, claiming he was protected by qualified immunity. The court denied summary judgment because it found genuine disputes of fact. We will vacate and remand.

## I.

On June 15, 2006, Kyle Johnston attended a party in Bethlehem, Pennsylvania, with his girlfriend. He was approximately 20 years old at the time, as were most persons at the party. When Edward Cipressi put his arm around Johnston's girlfriend, the two men got in a verbal altercation. Johnston left the party and drove to the home of his friend, Christopher Davis. Davis was a thirty four year-old African American teacher at a local high school.

Johnston and Davis returned to the party but were turned away at the front door. They walked around the side of the house towards the back, where guests were gathered. Davis was the only African-American at the party.[2] Johnston came into contact with

---

[1] In his Third Amended Complaint, filed November 16, 2009, Davis also sued Malitzki in his official capacity and brought claims against Bethlehem Township and several John Doe Defendants. In his Response to the Motion for Summary Judgment, filed February 21, 2010, Davis withdrew all charges except for two § 1983 charges, stemming from alleged violations of his Fourth Amendment and Fourteenth Amendment rights, against Malitzki in his individual capacity. *Davis v. Malitzki*, No. 09-0739, 2010 WL 962954m at *2-5 (E.D. Pa. Mar. 16, 2010).

[2] Davis alleges this fact in his complaint, *see* APP 66. Although Officer Malitzki "denied [this fact] as stated" in his response, he did not contest it on appeal. No evidence in the record suggests there were additional African-American individuals at the party.

Cipressi, and they began to scuffle. The fight grew to include Davis and at least two others, Robert Morrison and Edward Ballangee.[3] During the brawl, Davis drew a knife from his pocket. He stabbed Morrison, Ballangee, and his friend, Johnston, and slashed Cipressi in the hand. Morrison and Ballangee were taken to the hospital, Morrison for stab wounds to the stomach area and to the left arm and Ballangee for stab wounds to his right arm, where an artery was struck. APP 317. Morrison required emergency surgery and both eventually recovered. APP 323.

Officer Stephen Malitzki was assigned to be lead investigator for the case. He reported to the scene and collected physical evidence, including blood samples and dreadlocked hair. (Davis had dreadlocked hair.) Over the next several days, Malitzki, along with other officers, interviewed twelve to fifteen witnesses. Three were victims Cipressi, Ballangee, and Morrison, who each told the police an African-American male had struck them with a knife. In a statement Kyle Johnston identified Davis as the person responsible for the stabbings, and he related Davis stabbed him as well (although he did not seek treatment). Davis was interviewed on June 19, 2006, and admitted to wielding a

---

[3] The details of the fight are disputed. Davis alleges he was "an innocent observer . . . unexpectedly struck in the face with a beer bottle" after Johnston was "attacked by at least two (2) males." Appellee's Br. at 10. He contends "[s]ix (6) or more individuals then jumped on [him]. [He] remained crouched on his butt curled in an upright fetal position with his hands protecting his face. . . . [His] attackers were gathered in a circle around him, and [he] was continually punched and kicked at and around his face and body. [His] dreadlocks were pulled out of his hair in clumps. In response, [he] pulled a small Swiss army-like knife out of his pocket and began flailing in self-defense." *Id.* Meanwhile, Officer Malitzki describes the events differently. He contends "Davis claim[s] that he was not acting as an aggressor, but the majority of the witnesses clai[m] otherwise." Appellant's Br. at 7. Malitzki also states that "[w]itnesses suggested that only Davis, Johnston, Cipressi, Morrison and Ballangee were involved in the altercation, but Davis claimed that upwards of ten to fifteen people attacked him." *Id.*

knife at the party and to swinging it wildly, thereby stabbing multiple individuals. APP 292. But Davis claimed he had acted in self-defense.

On June 21, Officer Malitzki swore out a criminal complaint charging Davis with two counts of attempted homicide (for alleged attacks on Morrison and Ballangee), six counts each of aggravated assault and simple assault (for alleged attacks on Morrison, Ballangee, and Cipressi), and three counts of reckless endangerment (for alleged attacks on Morrison, Ballangee, and Cipressi). Officer Malitzki attached an Affidavit of Probable Cause, detailing the results of his investigation. Davis was arrested and his bail was set at $500,000. Because he could not afford bail, Davis remained in prison for seventeen months pending trial. He contends that during this time he lost his job and custody of his two children.

A jury found Davis not guilty on the attempted homicide charges as well as on the assault and reckless endangerment charges regarding Cipressi and Ballangee. It hung on the assault and reckless endangerment charges regarding Morrison. The Commonwealth declined to re-file the case after Morrison expressed a wish not to testify. A judgment of non-prosecution was entered on the two remaining counts.

Davis initiated this civil action on February 20, 2009, in the District Court for the Eastern District of Pennsylvania. Among other claims, Davis sued Officer Malitzki in his individual capacity under 42 U.S.C. § 1983 for violating his rights under the Fourth and Fourteenth Amendments. These violations stemmed, Davis contended, from Malitzki's malicious prosecution and selective prosecution of his case. The District Judge assigned the matter to a Magistrate Judge upon both parties' consent. Officer Malitzki moved for

4

summary judgment on grounds of qualified immunity, which the Magistrate Judge

denied. Malitzki filed a notice of appeal. On August 24, 2010, the Clerk of this Court

directed the parties to address issues of jurisdiction, in addition to the merits, in their

briefs.

## II.

We first determine whether we have jurisdiction to review the court's order

denying summary judgment.[4]  We conclude we do, but only over the legal aspects of the

order.  Ordinarily, appellate jurisdiction extends to "final decisions" of district courts. *See*

28 U.S.C. § 1291. The court's denial of summary judgment is not a "final decision"

within the meaning of § 1291. But an exception to this rule is made for collateral orders –

that "small class" of non-final district court decisions that merit interlocutory treatment

because they "finally determine claims of right separable from, and collateral to, rights

asserted in the action." *Cohen v. Beneficial Indus. Loan Corp*., 337 U.S. 541, 546 (1949).

An order denying summary judgment, when requested on the basis of qualified

immunity, is a collateral order. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

Accordingly, we have jurisdiction to review the court's ruling under the collateral orders

doctrine.

Our jurisdiction extends only to the legal conclusions encompassed in the order.

*Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010).  The Supreme Court has

established "immediate appeal from the denial of summary judgment on a qualified

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, given that Davis filed
federal claims under 42 U.S.C. § 1983. The Magistrate Judge had jurisdiction pursuant to
28 U.S.C. § 636(c).

immunity plea is available when the appeal presents a 'purely legal issue.'" *Ortiz v. Jordan*, 562 U.S. _ _, 131 S. Ct. 884, 891 (2011). A district court's "determin[ation] whether there is a genuine issue of material fact at summary judgment is a question of law," albeit one "that sits near the fact-law divide . . . [as] a 'fact-related' legal inquiry." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1947 (2009) (citing *Johnson v. Jones*, 515 U.S. 304, 314 (1995)). Accordingly, while we lack power to review the court's finding that there were disputes of fact in the summary judgment record, *see Blaylock v. City of Phila.*, 504 F.3d 405, 409 (3d Cir. 2007), we do have jurisdiction to review its legal conclusion that the factual disputes it identified were material to Officer Malitzki's entitlement to immunity, *Ziccardi v. City of Phila.*, 288 F.3d 57, 61 (3d Cir. 2002). Our review, in turn, is de novo. *Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009).[5]

III.

Qualified immunity is an affirmative defense available to government officials who are sued in their personal capacities for money damages. It offers not only immunity from liability, but "immunity from suit." *Mitchell*, 462 U.S. at 526 (emphasis omitted). Qualified immunity can be invoked through a motion for summary judgment or during trial. At either stage, it will attach if the official can demonstrate his conduct was "objectively reasonable." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding

---

[5] When conducting our review, we "apply the same test required of the district court" and view the evidence in the light most favorable to the non-moving party. *Bayer*, 577 F.3d at 191; *see also Walter v. Pike Cnty.*, 544 F.3d 182, 190 (3d Cir. 2008) (holding that although "the scope of our review is limited" in the context of an order denying summary judgment for qualified immunity, "we still apply the standard for summary judgment").

6

"the objective reasonableness of an official's conduct" is the lodestar of qualified immunity). There are two prongs to the objective reasonableness inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). If the official can show at least one prong was not met, he will be deemed to meet the standards necessary to qualify for immunity. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Reedy v. Evanson*, 615 F.3d 197, 223-24 (3d Cir. 2010).

The court denied summary judgment because it found there were genuine disputes of fact that were material to whether Officer Malitzki's conduct was "objectively reasonable." *See Curley v. Kim*, 298 F.3d 271, 278 (3d Cir. 2002) ("[T]he existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue."). This decision was in error. The factual disputes identified by the court were incapable, as a matter of law, of establishing that Malitzki's actions were objectively unreasonable.

A.

Davis alleges Officer Malitzki violated his Fourteenth Amendment rights under § 1983 in bringing a malicious prosecution. Malicious prosecution is a common law tort that occurs when an official initiates a criminal proceeding without probable cause. *Donahue v. Gavin*, 280 F.3d 371, 377-78 (3d Cir. 2002). The tort is actionable under 42 U.S.C. § 1983, because it undermines an individual's right to be free from unreasonable seizures under the Fourth Amendment. *Gallo v. City of Phila.*, 161 F.3d 217, 222-23 (3d

7

Cir. 1998).[6] To obtain qualified immunity in a § 1983 action premised on malicious prosecution, a police officer must show his actions were objectively reasonable under prevailing Fourth Amendment doctrines. *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Namely, he must show a reasonable officer in his shoes, aware of the same facts and circumstances, would have probable cause to arrest. *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986); *Orsatti*, 71 F.3d at 483.[7]

The court's denial of summary judgment was flawed because it recited no factual questions in dispute dispositive on whether Malitzki lacked probable cause to arrest under an objective reasonableness standard. Malitzki arrested Davis for four crimes under Pennsylvania law: attempted homicide, aggravated assault, simple assault, and reckless endangerment. The court identified only one factual dispute that it held bore on the reasonableness of the arrest—namely, whether Officer Malitzki should have "perceive[d]" Davis as acting in self-defense. *Davis*, 2010 WL 962954 at *4.[8] But this

---

[6] A plaintiff must make out five elements to show malicious prosecution claim has occurred. These are: (1) defendants initiated a criminal proceeding; (2) the proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty "consistent with the concept of seizure." *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009).

[7] Accordingly, there is a disconnect between the plaintiff's burden in proving a malicious prosecution has occurred and the defendant's burden in invoking immunity for such a charge. *Compare McKenna*, 582 F.3d at 461 (requiring a plaintiff to prove an officer had a "malicious" motive as part of his cause of action), *with Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) (holding "immunity . . . eliminates all motive-based claims," including malicious prosecution claims, if the official can show his conduct was objectively reasonable).

[8] The Magistrate Judge found the witness statements were in "direct conflict" regarding the order of the attack. *Davis*, 2010 WL 962954 at *4. Three victims told Officer Malitzki Davis "aggressively lunged" at them, while Davis and Johnston stated Davis swung his

8

factual dispute, no matter how it were resolved, could not be legally determinative of whether there was probable cause. "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citation omitted). A "credible report from a credible witness" can suffice, *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (3d Cir. 2000), and evidence that might exonerate a defendant does not defeat probable cause. *See, e.g.*, *id.* at 790 n.8; *Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003) (holding that probable cause does not turn on evidence that might exonerate because there is no "duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested"); *Gramenos v. Jewel Cos. Inc.*, 797 F.2d 432, 440 (7th Cir. 1986) ("The Court has never suggested that the police, with [incriminating] information in hand, must conduct a further investigation or put contradictory evidence into the affidavit.").

Here, the undisputed facts in the record –or at least, the facts not flagged as being in dispute by the court in its order–show Malitzki was in possession of "reasonably trustworthy information" of Davis's culpability. There were multiple reports from eyewitnesses stating Davis stabbed three victims with a knife and slashed one other. APP 319 (Affidavit of Probable Cause). Davis admitted, during his police interview to wielding a knife at the party and to making "slashing motions towards individuals." APP

---

knife reactively. *Id.* The court held whether these statements should have led Officer Malitzki to "perceive" Davis acted in self-defense was a genuine dispute of fact for the jury. *Id.*

9

321 (Affidavit of Probable Cause). To any reasonable officer, this information would have provided sufficient probable cause to arrest for attempted homicide, aggravated assault, simple assault, and reckless endangerment – all crimes involving the threat or infliction of bodily injury on another.[9] Davis's exculpatory defense, no matter how compelling, could not defeat this already-present probable cause. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (holding a suspect's claim of acting in self-defense did not defeat the existence of probable cause for his arrest, given other incriminating evidence).[10]

B.

Davis also contends Officer Malitzki violated his Fourteenth Amendment rights under § 1983 in bringing a selective prosecution.[11] Selective prosecution is a form of

---

[9] Under Pennsylvania law, attempted criminal homicide involves taking a substantial step towards "caus[ing] the death of another human being," with intent. 18 Pa. Cons. Stat. Ann. §§ 901(a) (attempt) & 2501(a) (criminal homicide) (West 2011). Aggravated assault occurs when one "causes serious bodily injury" to another with either intent, knowledge, or recklessness. 18 Pa. Cons. Stat. Ann. § 2702(a)(1) (West 2011). Simple assault occurs when one causes bodily injury to another, with either intent, knowledge or recklessness. 18 Pa. Cons. Stat. Ann. § 2701(a)(1)&(2) (West 2011). Recklessly endangering another person is achieved through "recklessly engage[ing] in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. Cons. Stat. Ann. § 2705 (West 2011).

[10] The Second Circuit's language in *Ricciuti* is instructive: "Plaintiff insists . . . the arrest was objectively unreasonable because plaintiff's loud protestations of innocence should have made clear to Officer Lopez that plaintiff was acting in self-defense . . . . We are not persuaded. Although Officer Lopez would have been entitled to believe [plaintiff's] version of events rather than Watson's, he was not required to do so. Given Watson's version of events and his visible injuries, a competent police officer could believe it was objectively reasonable to arrest plaintiff for the assault that had been committed." *Ricciuti*, 124 F.3d at 128.

[11] Davis has styled his claim as one arising from "selective prosecution," *see* APP 72 (Complaint); Appellee's Br. at 23-24. The proper course would have been to plead

10

discriminatory law enforcement that has been held to violate the Equal Protection Clause of the Fourteenth Amendment since *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), which held officials liable for "illegal discrimination" when they "applied and administered" a facially neutral law "with an evil eye and an unequal hand." Two factors must be proved: first, that persons similarly situated were not prosecuted; second, that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion or "some other arbitrary factor." *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989) (per curiam). A defendant-official, to obtain qualified immunity, must show his conduct was "objectively reasonable" under Equal Protection Clause doctrines. *See Cobb v. Pozzi*, 363 F.3d 89, 111-12 (2d Cir. 2004); *Kosta v. Connolly*, 709 F. Supp. 592, 595 (E.D. Pa. 1989).

The court's order fails to identify facts in dispute whose resolution could support a finding that Officer Malitzki's conduct was objectively unreasonable under the Equal Protection Clause. The court held that "in dispute is whether Defendant Malitzki only arrested Plaintiff because he was the sole minority involved in the altercation." *Davis,* 2010 WL 962954 at *9-10. Were that the only factor distinguishing Davis from the others

---

"selective enforcement." As we have held, "the two are different Fourteenth Amendment claims," *Dique v. New Jersey State Police*, 603 F.3d 181, 188 n.10 (3d Cir. 2010), and when a plaintiff's grievance is directed solely at police misconduct, the claim should be for selective enforcement. *See, e.g.*, *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). However, the standards are virtually identical. *Compare id.* at 125 (holding selective enforcement occurs when (1) there are similarly situated persons against whom the law was not enforced and (2) the official's conduct is motivated by an "unjustifiable standard"), *with Schoolcraft*, 879 F.2d at 68 (setting forth the elements of selective prosecution, which are identical). Thus, we do not treat this error as fatal to Davis's suit nor as material to our decision here.

11

involved in the altercation, he might be able to show that others were "similarly situated." But the undisputed facts demonstrate that Davis was the only person who wielded a knife at the party, and stabbed persons with it. Significantly, most of the witnesses interviewed named Davis as the sole aggressor.[12]

IV.

We will vacate and remand for proceedings consistent with this opinion. If the court is aware of other factual disputes which could, as a matter of law, enable a jury to find Officer Malitzki's conduct was objectively unreasonable, it may reconsider and reenter judgment, subject to further appellate review. *Cf. Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 151 (3d Cir. 2002) ("[I]t would aid us to know if the District Court . . . considered any other factual issues bearing on whether [the officer's] conduct was objectively unreasonable or whether it interfered with a clearly established constitutional right . . . The judgment of the District Court is vacated, and we remand the case for reentry of judgment . . ."). Otherwise, the court shall enter judgment in favor of Officer

---

[12] There were witness reports about a separate fight between Cipressi and Johnston that occurred simultaneous to Davis's brawl with Morrison and Ballangee, but no witness related that either individual suffered a knife injury as a result. Namely, Cipressi told the police that after Davis "lunge[d] toward Rob and either punche[d] him or stab[bed] him . . . he did not want to get hit by the other kid [Kyle Johnston], so he punche[d] him and g[ot] him down on the ground, not knowing if he was going to get jumped." APP 295. Johnston similarly stated "he looked over at Chris and he saw Chris fighting with the other two guys and then all of a sudden the guy he had problems with [Cipressi] removed his shirt and threw a punch at him . . ." APP 265. Courtney Bray confirmed seeing "Eddie and the other white kid [] fighting separately in a different area of the driveway." APP 293. None of these witnesses reported that either Cipressi or Johnston were stabbed, slashed or wounded by a knife during their fight.

12

Malitzki. As noted, for the reasons stated, we will vacate and remand for proceedings consistent with this opinion.