**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 15-1268

———————

JOHN CHARLES MAZUKA,

v.

RICE TOWNSHIP POLICE DEPARTMENT; OFFICER ANTHONY MARTINE

Officer Anthony Martine,
                                        Appellant

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 3-13-cv-02003)
District Judge: Hon. Robert D. Mariani

———————

Argued:  May 31, 2016

———————

Before: SMITH, GREENAWAY, JR., and SHWARTZ, <u>Circuit Judges</u>.

(Filed: July 8, 2016)

———————

OPINION[*]

———————


Christopher P. Gerber [ARGUED]
Siana Bellwoar & McAndrew

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

941 Pottstown Pike
Suite 200
Chester Springs, PA 19425

      Counsel for Appellant

Daniel Stepanicich [ARGUED]
University of Pennsylvania
School of Law
3400 Chestnut Street
Philadelphia, PA 19104

Joseph J. Gribbin
Joseph S. McFarlane
Will W. Sachse
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

      Counsel for Appellee

SHWARTZ, Circuit Judge.

John Mazuka sued Officer Anthony Martine, pursuant to 42 U.S.C. § 1983, for false arrest and false imprisonment in violation of the Fourth Amendment. Martine arrested Mazuka for fleeing and eluding by failing to stop his vehicle when directed to do so. Martine moved for summary judgment, asserting that he was entitled to qualified immunity. The District Court denied Martine's motion, finding that factual disputes existed concerning whether Martine's conduct in arresting Mazuka was reasonable. Because the basis for the District Court's ruling was its correct determination that a factual dispute existed, we lack appellate jurisdiction under the collateral-order doctrine and will dismiss this appeal.

2

I[1]

Early in the morning of August 6, 2011, Mazuka was driving home from work and noticed a set of headlights off to his right at an intersection. He soon noticed the same set of headlights behind him and realized that they belonged to a police car. Martine, who was driving the police car, activated his emergency lights,[2] but Mazuka continued on. After Mazuka drove half a mile without pulling over, Martine turned on his siren. Mazuka asserted that he "did not immediately pull over because he did not see a safe place to do so" and did not believe he could pull over onto someone else's property. App. 12a-3a. Instead, Mazuka slowed down, turned on his hazard lights and the car's interior dome light, and drove for another mile before pulling into a parking lot. Two minutes passed between the time Martine turned on the police car's emergency lights and Mazuka pulled over. Martine arrested Mazuka for fleeing and eluding under 75 Pa. Cons. Stat. Ann. § 3733(a), and also charged him with several traffic violations. All charges were dropped at a preliminary hearing.

Mazuka filed a § 1983 complaint against Martine, alleging, among other things, false arrest and false imprisonment in violation of the Fourth Amendment.[3] After discovery, Martine moved for summary judgment. The Magistrate Judge recommended,

___

[1] The following facts are drawn from the District Court's statement of facts, which we must accept "as given" in this interlocutory appeal. Walker v. Horn, 286 F.3d 705, 707 (3d Cir. 2002).

[2] According to Martine's affidavit of probable cause, Mazuka was speeding and had crossed into the path of oncoming traffic, which both violate Pennsylvania's traffic laws.

[3] Mazuka also filed claims against Martine and the Rice Township Police Department that are not relevant to this appeal.

among other things, that summary judgment be denied on Mazuka's false arrest and false imprisonment claims because: (1) it was unclear from the evidence whether "Mazuka maneuvered his car in such a manner so as to reflect an intention of avoiding Martine's direction"; and (2) a possible affirmative defense under the statute, namely Mazuka's claim that it would have been unsafe for him to pull over immediately, was relevant to whether Martine had probable cause. App. 20a-22a. The Magistrate Judge reasoned that the factual determination of "whether Mazuka could have safely pulled over once Martine activated his police lights and siren . . . could cause a reasonable juror to ultimately find that probable cause existed, or, alternatively, it could cause this Court to ultimately conclude that qualified immunity is applicable." App. 28a.

The District Court adopted this portion of the Magistrate Judge's Report and denied the motion. Martine appeals.

II

A

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction "to determine [our] own jurisdiction," United States v. Ruiz, 536 U.S. 622, 628 (2002), and "exercise de novo review over an argument alleging a lack of appellate jurisdiction," Montanez v. Thompson, 603 F.3d 243, 248 (3d Cir. 2010). While our appellate jurisdiction under 28 U.S.C. § 1291 is generally limited to appeals from district courts' final orders, § 1291 also permits us to review "certain collateral orders . . . because they finally determine claims of right too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case

4

is adjudicated." Forbes v. Twp. of Lower Merion, 313 F.3d 144, 147 (3d Cir. 2002) (internal quotation marks and alteration omitted).

Orders immediately appealable under this "collateral-order doctrine" include the denial of a defendant's motion for summary judgment on qualified immunity grounds, "because the entitlement [to qualified immunity] is an immunity from suit rather than a mere defense to liability and is effectively lost if a case is erroneously permitted to go to trial." Id. (emphasis in original) (internal quotation marks and alterations omitted). Such appeals may be taken, however, only to the extent that the defendant's purported entitlement to qualified immunity turns on an issue of law. Id. We may not consider on interlocutory appeal "whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove" or entertain an argument "that a trial judge erred in denying a qualified-immunity summary judgment motion because the judge was mistaken as to the facts that are subject to genuine dispute." Id. (internal quotation marks omitted).

B

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To overcome qualified immunity, a plaintiff must point to evidence "showing (1) that the official violated a statutory or constitutional right, and (2) that the

right was clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (internal quotation marks and citation omitted).

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). The right implicated in this case is the right to be free from arrest without probable cause, which, despite its breadth, is a bedrock constitutional principle and a clearly established right. See U.S. Const. amend. IV; Kelly v. Borough of Carlisle, 622 F.3d 248, 256 (3d Cir. 2010) ("[I]t [is] clearly established that an arrest [can] be made only on the basis of probable cause."); Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) ("[T]here is no question that the right at issue, namely, the right to be free from arrest except on probable cause, was clearly established at the time of Orsatti's arrest."). Having identified the clearly established right at issue here, we next address whether there are disputed issues of fact that need to be resolved to determine if Mazuka's right to be free of arrest without probable cause has been violated.

Martine arrested Mazuka for violating Pennsylvania's fleeing and eluding law, 75 Pa. Cons. Stat. Ann. § 3733(a). A violation of § 3733(a) occurs when a driver "willfully fails or refuses to bring his vehicle to a stop, or . . . otherwise flees or attempts to elude a pursuing police officer," after being "given a visual and audible signal to bring the vehicle to a stop." Id.

As the District Court noted, the undisputed facts show that after Martine activated his lights, Mazuka did not immediately pull over, but did reduce his speed, activate his

6

hazard lights, and ultimately turn on his interior dome light. Mazuka also testified that there was no safe place to immediately pull over, and submitted photographs of the roadway that he contends support his claim. Putting aside whether this gives rise to an affirmative defense under the statute,[4] when viewed by a reasonable juror in the light most favorable to Mazuka, his ability to safely pull over after Martine first activated his lights is a disputed question of fact which strikes at the heart of whether a reasonable officer could have had probable cause to believe Mazuka was fleeing or attempting to elude Martine, as opposed to simply looking for a place to safely pull over. Cf. Reiff v. Marks, No. 08-CV-5963, 2011 WL 666139, at *8 (E.D. Pa. Feb. 23, 2011) (finding probable cause existed where driver made several turns and engaged in evasive driving after police lights were activated). Because this factual dispute was a proper basis for denying summary judgment, we lack jurisdiction to consider this appeal.[5]

III

---

[4] The statute provides that "[i]t is a defense to prosecution under this section if the defendant can show by a preponderance of the evidence that the failure to stop immediately for a police officer's vehicle was based upon a good faith concern for personal safety[,]" 75 Pa. Cons. Stat. Ann. § 3733(c) (2) & (iv) (2006), and sets forth several factors a court may consider to determine if the defendant met this burden, including "[w]hether the defendant stopped at the first available reasonably lighted or populated area." Id.

[5] Because we have concluded that there is an issue of fact concerning the existence of probable cause, we need not address Mazuka's argument that there is a clearly established right to have an officer, as part of his probable cause determination, consider whether an affirmative defense negates the existence of probable cause. We do note, however, that Martine's affidavit of probable cause makes clear that he was aware of the affirmative defense and memorialized facts concerning it, thereby suggesting that he considered the facts available to him that could support the statutory affirmative defense. App. 88a (stating that Mazuka "had numerous safe places to pull his vehicle to the side of the road but refused to do so").

7

For the foregoing reasons, we will dismiss the appeal.

*Mazuka v. Rice Township Police Department*, No. 15-1268

Smith, *Circuit Judge*, concurring

I join Judge Shwartz's excellent opinion in all respects. I agree that there is a disputed issue of fact as to whether Mazuka was fleeing Martine or simply looking for a place to safely pull over. I write separately to address the propriety of a court requiring an officer to consider an affirmative defense when that officer is making a probable cause determination for purposes of a warrantless arrest, an issue raised by the District Court and fully briefed by the parties. Despite a string of three precedential opinions touching on the subject, we have yet to provide district courts with a clear rule on the subject. Nor is this the case in which to do so. There will be a time when we take on this issue, though, so I take the occasion to state my view that an affirmative defense should be considered relevant to a probable cause determination only when a reasonable police officer effectuating a warrantless arrest would "conclusively know" that the affirmative defense either negates the requisite mental state or excuses the offending conduct.

## I.

A police officer considering whether there is probable cause to arrest without a warrant must conduct an inherently fact-based analysis at the scene of the crime. *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir.

1984).  No officer at the scene of an alleged offense has a chance to place all of the evidence onto a bulletin board, pursue various factual and legal theories, or interview all possible witnesses.  Instead, the officer typically must make his decision to arrest a suspect at the scene of the crime – a site where he is concerned for his own safety as well as the safety of those around him.  *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005) ("Under qualified immunity, police officers are entitled to a certain amount of deference for decisions they make in the field.  They must make 'split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'"  (quoting *Saucier v. Katz*, 533 U.S. 194, 204-05 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)); *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) ("[T]he law recognizes that probable cause determinations have to be made 'on the spot' under pressure and do 'not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands.'"  (quoting *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975))).

For that reason, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972); *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) ("[T]he evidentiary

2

standard for probable cause is significantly lower than the standard which is required for conviction."). Instead, "probable cause exists when the totality of the circumstances within an officer's knowledge is sufficient to warrant a person of reasonable caution to conclude that the person being arrested has committed or is committing an offense." *United States v. Laville*, 480 F.3d 187, 189 (3d Cir. 2007). As its name implies, probable cause "require[s] a belief of guilt that is reasonable, as opposed to certain." *Wright*, 409 F.3d at 601-02. Thus, qualified immunity is appropriate "unless it would have been clear to a reasonable officer there was no probable cause to arrest." *Giles*, 427 F.3d at 205.

On the other hand, an affirmative defense is just that – a legal argument that must be raised by a defendant in court. *Ashcroft v. Free Speech Coal.*, 535 U.S. 235, 255 (2002) ("An affirmative defense applies only after the prosecution has begun."). Even if a case advances to trial, "proof of the nonexistence of all affirmative defenses has never been constitutionally required." *Smith v. United States*, 133 S. Ct. 714, 719 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). Indeed, except in those cases "when an affirmative defense does negate an element of the crime," defendants can be made to bear the burden of proving

affirmative defenses. *Id.* (quoting *Martin v. Ohio*, 480 U.S. 228, 237 (1987)).

Thus, considering the nature of affirmative defenses and the context in which they are raised, it is problematic for a court to require officers to always consider affirmative defenses in their probable cause analyses when they are making warrantless arrests. For starters, affirmative defenses must be raised by the defendant and pursued in the courtroom, whereas the probable cause determination that is made by a police officer is made at the scene. Second, different affirmative defenses are subject to different burdens of proof, whereas the probable cause analysis always requires "a person of reasonable caution to conclude that the person being arrested has committed or is committing an offense" based on the totality of the circumstances. *Laville*, 480 F.3d at 189. An officer does not even know when making an arrest *if* an affirmative defense will be raised at trial. And even if facts relevant to an affirmative defense are asserted at the time of arrest, "the [probable cause] standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright*, 409 F.3d at 603. We should, therefore, be exceedingly wary of subjecting police officers to § 1983 liability for failing to consider affirmative defenses at the time of arrest.

In three opinions of this court, we have discussed whether an affirmative defense should be considered part of the probable cause analysis. Each case dealt with a different affirmative defense in a unique factual scenario, and all three rejected the applicability of the affirmative defense to the probable cause analysis in that case. The proverbial door has therefore been left open for future cases. The fact-specific contours of these opinions have provided little guidance for courts in our circuit. I set forth here what I believe to be the proper test: an affirmative defense is only applicable to the probable cause analysis when a reasonable officer making an arrest without a warrant would *conclusively know* that the affirmative defense excuses the offending conduct.

## II.

In our first case to address the subject, *Radich v. Goode*, the plaintiffs conceded that "their actions constitute[d] the offense of defiant trespass," but they argued that the district court erred in not considering the affirmative defense that the premises were open to the public. 886 F.2d 1391, 1396 (3d Cir. 1989). We "assume[d] *arguendo* that [plaintiffs were] correct that to establish probable cause for arrest under Pennsylvania's defiant trespass statute the arresting officer must consider the statute's affirmative defense." *Id.* Under such an assumption, we stated that the plaintiffs "must not only

5

show facts which support the defense, but also that a reasonable police officer would know of these facts and conclude that a defiant trespass had not been committed." *Id.* Because the facts supporting the affirmative defense were not present, we had no need to actually decide the role of an affirmative defense in the probable cause analysis. *Id.* at 1396-98.

Next, we considered *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). As in *Radich*, the plaintiff in *Sands* did not contest that the arresting officer had "sufficient evidence to believe that she committed the offenses" for which she was arrested. *Id.* at 269. Instead, she argued that the arresting officer lacked probable cause because "he knew that the statute of limitations had expired." *Id.* We held that "[t]he statute of limitations is an affirmative defense that is to be ruled upon by a court of competent jurisdiction," and is not "a relevant consideration at the time a police officer files charges." *Id.* To hold otherwise, we reasoned, "would place far more responsibility on police officers than is required by their calling," as the statute of limitations "is not a clear cut matter in criminal prosecutions" due to the extension and tolling of the period in certain circumstances. *Id.* Instead, this "is a legal question that is appropriately evaluated by the district attorney or by a court after a prosecution is begun." *Id.* (quoting *Pickens v. Hollowell*, 59 F.3d 1203, 1207-08 (11th Cir. 1995)). Unlike the district

6

attorney, the presiding judge, or the magistrate judge (who signed the arrest warrant in the case), "[a] police officer has limited training in the law and requiring him to explore the ramifications of the statute of limitations affirmative defense is too heavy a burden." *Id.*

Most recently, we decided *Holman v. City of York, PA*, 564 F.3d 225 (3d Cir. 2009), where the plaintiff had been arrested for trespass. As in *Radich* and *Sands*, the plaintiff conceded that all the elements for a prima facie case had been met. *Id.* at 230. The plaintiff argued instead that the affirmative defense of necessity negated probable cause. *Id.* at 229. We distinguished this case from *Radich*, where the affirmative defense was included in the statute defining the charged offense, because the necessity defense appeared in a separate section of the criminal code in *Holman*. *Id.* Like *Sands*, which "require[d] an analysis of legal considerations that should not concern an arresting officer," the necessity defense raised by the plaintiff would "require an officer to resolve equally daunting issues" and "to examine countless factual permutations." *Id.* at 231. We therefore concluded that the affirmative defense of necessity had no bearing on the probable cause determination. *Id.* Because there was no need to address when consideration of an affirmative defense might be part of the probable

7

cause calculus, we declined to endorse the District Court's statement that affirmative defenses are never a relevant consideration. *Id.*

### III.

As our cases demonstrate, we have *never* held that an affirmative defense is a relevant consideration in the probable cause analysis. [1] In leaving the question open, we have provided little-to-no guidance for district courts on when it is appropriate to consider an affirmative defense. For example, in the present case, the magistrate judge drew on our three opinions to discern a rule that an affirmative defense should be considered in the probable cause analysis if "(1) the affirmative defense can be found in the same criminal statute as the underlying crime," as it was in *Radich* but not *Holman*; and "(2) the affirmative defense does not require an officer to engage in an analysis of 'daunting' legal considerations," as in *Sands*. App. 22a. This interpretation of our three cases was not unreasonable. However, I fail to see why the location of an affirmative defense in the criminal code is an important distinction, much less one that we would expect an arresting

---

[1] While I express no view on this issue at present, I question whether, even if an affirmative defense is a proper consideration for an officer making the probable cause determination, this is "clearly established" for purposes of overcoming qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (stating that for such purposes the Supreme Court "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate").

8

officer at the scene of a crime to make.[2]  Indeed, this is not a factor that any other court of appeals considers.  Instead, other courts look only to the facts known by the police officer at the time of arrest without requiring further investigation or complex legal analysis.

Other courts to have considered the use of affirmative defenses in the probable cause analysis to arrest have held that an affirmative defense is appropriately considered only in very rare circumstances.  *See Wesby v. District of Columbia*, 765 F.3d 13, 21 (D.C. Cir. 2014) (requiring the consideration of the affirmative defense of a bona fide belief of the right to enter when making a probable cause determination for unlawful entry into the house, as the defense negated the mental state to commit the crime and the officers were aware that the defense was clearly applicable); *Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003) (requiring an off-duty police officer to consider the affirmative defense of self-defense when the plaintiff alleged that the off duty officer attacked him first); *Painter v. Robertson*,

---

[2] The District Court relied upon our decision in *Holman* in concluding that this was a relevant consideration.  It is true that our *Holman* panel distinguished its case from *Radich* on these grounds.  *Holman v. City of York, PA*, 564 F.3d 225, 230 (3d Cir. 2009).  However, this language was *dicta*, as it was not necessary to the holding that the necessity defense involved the consideration of "countless factual permutations," which we do not require of police officers making a probable cause determination.  *Id.* at 231.  Moreover, there was no need to distinguish *Radich*, as that was a case where we merely assumed *arguendo* that an affirmative defense was an appropriate consideration before rejecting that particular defense based on those particular facts.  *Radich v. Goode*, 886 F.2d 1391, 1396 (3d Cir. 1989).

185 F.3d 557, 570-72 & n.21 (6th Cir. 1999) (denying qualified immunity to one officer who was aware that the plaintiff lawfully possessed a firearm, but granting it to another officer who was simply following the other's instructions); *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1011-14 (6th Cir. 1999) (arresting officers were aware that money couriers had an affirmative defense to possession of a concealed firearm if it was for their lawful occupation and that money couriers were often contractually obligated to carry firearms).

In *Painter*, the court emphasized that affirmative defenses should play a role in the probable cause determination only "where a reasonable police officer would *conclusively know* that an [arrestee's] behavior is protected by a legally cognizable affirmative defense. . . . In all other cases, the merits of an alleged affirmative defense should be assessed by prosecutors and judges, not policemen." 185 F.3d at 571 n.21 (emphasis added).

The "conclusively know" standard spelled out in *Painter* and subsequently reaffirmed by the Court of Appeals for the Sixth Circuit has much to commend it. *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002) ("Even if the circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not 'conclusively know' that the suspect is protected by the defense, then he is free to arrest the suspect

10

provided there is probable cause to do so."). This is also consistent with the decisions of other courts of appeals to have addressed the issue, even if they do not use the words "conclusively know." *See Wesby*, 765 F.3d at 21 ("A reasonably prudent officer aware that the Plaintiffs gathered pursuant to an invitation from someone with apparent (if illusory) authority could not conclude that they had entered unlawfully."); *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004) ("A police officer may not ignore conclusively established evidence of the existence of an affirmative defense, but the officer has no duty to investigate the validity of any defense." (internal citation omitted)); *Jocks*, 316 F.3d at 136 (holding that an arresting officer may not "deliberately disregard" the existence of facts establishing an affirmative defense). I emphasize that "conclusively know[ing] that an [arrestee's] behavior is protected by a legally cognizable affirmative defense," *Painter*, 185 F.3d at 571 n.21, is different from whether an officer "might have some idea that such a defense could exist." *Garcia v. Does*, 779 F.3d 84, 96 (2d Cir. 2014).

When considering whether an officer would "conclusively know" that an affirmative defense is applicable, we do not require a police officer to undertake a "daunting legal analysis," such as determining the applicability of the statute of limitations defense. *See Sands*, 502 F.3d at 269. While an

11

officer may not "deliberately disregard facts known to him which establish [an affirmative defense]," *Jocks*, 316 F.3d at 136, we also do not require him to investigate facts that would help to establish a defense, even if the defense is asserted at the time of arrest. *Holman*, 564 F.3d at 231. For example, if a police officer arrives at the scene of a battery, and the arrestee claims self-defense, the officer does not need to investigate this claim before making the arrest. *See Davis v. Malitzki*, 451 F. App'x 228, 233 (3d Cir. 2011) (applying this rule to self-defense). Instead, he can make the arrest and investigate later; if the claim of self-defense is clearly demonstrated after further investigation, the charges can be dropped in the exercise of prosecutorial discretion. This would not negate the fact that probable cause existed *at the time of arrest*. *Wright*, 409 F.3d at 602 ("In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime."); *Davis*, 451 F. App'x at 234 ("Davis's exculpatory defense, no matter how compelling, could not defeat this already-present probable cause.").

In my view, an affirmative defense is only an appropriate consideration where a reasonable officer making a warrantless arrest would "conclusively know" the facts and the law, without any further investigation, that would make clear that no crime had been committed. *Painter*, 185 F.3d

12

at 571 n.21; *Garcia*, 779 F.3d at 96 (granting qualified immunity to police officers when "the officers were confronted with ambiguities of fact and law" concerning the applicability of an affirmative defense). This may happen when an element of the crime is clearly negated by the affirmative defense, as in *Wesby*, 765 F.3d at 21, or it may happen when all of the elements of the crime are present, but the affirmative defense is so clearly present that a reasonable arresting officer in that situation would know that it excused the offending conduct. *Hodgkins*, 355 F.3d at 1061.

## IV.

In the case under review, regardless of the presence of an affirmative defense, there is a factual dispute as to whether probable cause to arrest was lacking. Thus, there was no need for this panel to consider the propriety of an arresting officer's taking into account, during his probable cause to arrest analysis, the availability of an affirmative defense. I write separately solely for the purpose of bringing to my colleagues' attention an important issue which we should one day resolve.