**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-2637
_____

JONATHAN WAGNER,
Appellant

v.

NORTHERN BERKS REGIONAL POLICE DEPARTMENT; LEESPORT BOROUGH;
MAIDENCREEK TOWNSHIP; ONTELAUNEE TOWNSHIP; POLICE OFFICER
RICHARD B. HORNER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-17-cv-03786)
District Judge:  Hon. Joseph F. Leeson, Jr.
_____

Argued May 21, 2019
_____

Before:  MCKEE, SHWARTZ, and FUENTES, <u>Circuit Judges</u>.

(Filed: July 17, 2020)
_____

Thomas Bruno, II    [ARGUED]
Abramson & Denenberg
1315 Walnut Street
12th Floor
Philadelphia, PA 19107

*Counsel for Appellant*

Carolyn N. Flynn
Christopher P. Gerber        [ARGUED]
Siana Bellwoar & McAndrew
941 Pottstown Pike
Suite 200
Chester Springs, PA 19425

    *Counsel for Appellees*


_____

OPINION*

_____


SHWARTZ, <u>Circuit Judge.</u>

    Today we will affirm the dismissal of Jonathan Wagner's malicious prosecution claim as the law does not impose an obligation upon a police officer to file all charges arising from common evidence at one time. While there may be valid questions about whether it is good law enforcement practice to bring charges based on similar evidence in a piecemeal fashion, requiring an officer to make such a judgment may cause officers to make premature charging decisions out of a fear of facing a malicious prosecution claim for bringing later charges supported by earlier gathered evidence. This outcome is consistent with settled precedent that the presence of probable cause supporting the subsequent charges bars a malicious prosecution claim under 42 U.S.C. § 1983 and Pennsylvania law, <u>Montgomery v. De Simone</u>, 159 F.3d 120, 124 (3d Cir. 1998) (§ 1983); <u>Corrigan v. Cent. Tax Bureau of Pa., Inc.</u>, 828 A.2d 502, 505 (Pa. Commw. Ct.

_____

    * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

2003) (Pennsylvania law), and our caselaw absolving officers from having to consider complex affirmative defenses, like Pennsylvania's compulsory joinder rule, when making a probable-cause determination. Because the officer here, Defendant Richard Horner, had probable cause to arrest Wagner, and Horner was not required to consider pure legal defenses in reaching that conclusion, Wagner failed to state a claim for malicious prosecution. Therefore, we will affirm the order dismissing his civil rights complaint.

I

In January 2013, Horner observed Wagner and Ellis Garman take packages from the porch of a residence. Horner arrested Wagner for crimes arising from this single incident, including theft, receipt of stolen property, and conspiracy to commit theft under Pennsylvania law. In March 2013, Wagner pleaded guilty to one count of receiving stolen property, and he received one year of probation. At the time of the arrest, additional packages were found in Garman's van.

After Wagner's January 2013 arrest, law enforcement conducted further investigation, which revealed that, between December 2012 and January 2013, police received reports of more than twenty thefts of parcels delivered to homes in Berks County, Pennsylvania. In May 2013, law enforcement interviewed Garman, who stated that he and Wagner had committed the thefts.

In January 2014, Horner filed a criminal complaint against Wagner, charging him with theft, receipt of stolen property, and conspiracy to commit theft under Pennsylvania law for thefts of a variety of packages. In support of the complaint, Horner submitted an affidavit of probable cause. The affidavit described: (1) the events giving rise to the 2013

3

conviction; (2) the January 2013 search of the van; and (3) the May 2013 interview with Garman describing Wagner's role in other thefts. The affidavit, however, did not mention Wagner's 2013 prosecution, nor does Wagner allege that he was charged again with the single theft that gave rise to that prosecution.

Wagner moved to dismiss the 2014 criminal charges, arguing that under Pennsylvania's compulsory joinder rule, Wagner's 2013 case barred his 2014 prosecution. See 18 Pa. Cons. Stat. § 110(1)(ii). Pennsylvania's compulsory joinder rule "serve[s] the same ends" as the Double Jeopardy Clause of the Fifth Amendment, Commonwealth v. Johnson, 466 A.2d 636, 639 (Pa. Super. Ct. 1983), and bars a subsequent prosecution if "(1) the former prosecution . . . resulted in an acquittal or conviction; (2) the current prosecution is based on the same criminal conduct or arose from the same criminal episode as the former prosecution; (3) the prosecutor was aware of the instant charges before commencement of the trial on the former charges; and (4) the current offense occurred within the same judicial district as the former prosecution,"[1] Commonwealth v. Perfetto, 207 A.3d 812, 821 (Pa. 2019) (citation

---

[1] The compulsory joinder rule and the Double Jeopardy Clause, however, "are not one and the same" because one involves a statutory right and the other a constitutional right. Johnson, 466 A.2d at 639-40. In addition, "while the double jeopardy clause and [the compulsory joinder rule] at times may . . . overlap in their application, this is not true in all situations." Id. at 640. The compulsory joinder rule may have broader force in some cases. See id. Despite their differences, both require a legal inquiry. See Commonwealth v. Perfetto, 207 A.3d 812, 821 (Pa. 2019) (enumerating elements for the compulsory joinder rule to apply); see also United States v. Rigas, 605 F.3d 194, 204 (3d Cir. 2010) (en banc) (explaining that "a court looks to the statutory elements of the crime charged to determine if there is any overlap" in determining whether double jeopardy applies (citation omitted)).

4

omitted); see 18 Pa. Cons. Stat. § 110(1)(ii). The Pennsylvania state trial court granted the motion and dismissed the 2014 criminal charges.

Wagner then filed this lawsuit, alleging that Horner "maliciously initiated criminal proceedings against [him] without probable cause," App. 32 ¶ 27, and asserted three claims: (1) a § 1983 claim against Horner for violation of his Fourth Amendment rights; (2) a malicious prosecution claim against Horner under Pennsylvania law; and (3) a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978), against the municipal defendants. The District Court granted Horner's motion to dismiss and Wagner appeals.

## II[2]

### A

To prevail on his § 1983 and state-law malicious prosecution claims, Wagner "must establish, among other things, an absence of probable cause for the initiation of the proceedings against [him]." Montgomery, 159 F.3d at 124 (§ 1983); see also Corrigan,

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We review de novo the Court's dismissal of Wagner's complaint for failure to state a claim under Rule 12(b)(6). Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). We disregard "a pleading's legal conclusions" but "assume all remaining factual allegations to be true" and construe them in the light most favorable to the plaintiff. Connelly v. Lane Constr. Corp., 809 F.3d 780, 790 (3d Cir. 2016). We may also consider exhibits attached to the complaint and matters of public record. See Estate of Roman v. City of Newark, 914 F.3d 789, 796 (3d Cir. 2019). Wagner attached several exhibits to his complaint, including: (1) the 2014 criminal complaint; (2) Officer Horner's affidavit in support of probable cause for the 2014 arrest warrant; (3) Wagner's motion to dismiss the criminal proceedings; and (4) the order dismissing Wagner's prosecution.

828 A.2d at 505 (Pennsylvania law). A police officer has probable cause to arrest "when the facts and circumstances within [his] knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citing United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990)); see also Corrigan, 828 A.2d at 505 (defining "probable cause" as "a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged").

The District Court correctly held that Horner had probable cause to arrest Wagner in 2014 for, among other crimes, theft. Pennsylvania law provides that a "person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa. Cons. Stat. § 3921(a). Horner saw Garman and Wagner take unattended packages "sitting on people's porches," App. 55, found several stolen packages in Garman's van, and learned from Garman that he "participated with . . . Wagner in the thefts" from various victims dating back to December 2012, App. 55-59. Based on Horner's observation and Garman's statements about other thefts, Horner had a reasonable basis to believe that Wagner committed numerous crimes in addition to the January 2013 theft that police observed Wagner commit. In other words, Horner learned of additional facts that, at a minimum, connected Wagner to the theft of other packages in December 2012, so new probable cause supported the later arrest.

6

Wagner argues that two affirmative defenses, Pennsylvania's compulsory joinder rule and the Double Jeopardy Clause, vitiated probable cause for his arrest, and criticizes Horner for failing to disclose facts that relate to these defenses. "[P]olice officers," however, "have no responsibility to determine" the applicability of such affirmative defenses,[3] Sands v. McCormick, 502 F.3d 263, 269 (3d Cir. 2007) (internal quotation marks and citation omitted), and by implication, the facts relevant to them. As we have explained, some affirmative defenses, such as statute of limitations, are not "relevant consideration[s] at the time a police officer files charges." Id. We do not require police officers to consider certain affirmative defenses because their "application . . . is not a clear cut matter in criminal prosecutions," id., and it "would be impractical" for officers in some cases to "weigh possible defenses," Holman v. City of York, 564 F.3d 225, 231 (3d Cir. 2009).

Pennsylvania's compulsory joinder rule and the Double Jeopardy Clause implicate "an analysis of legal considerations that should not concern" a police officer. Id. Both involve inquiries "appropriately evaluated by the district attorney or by a court after a prosecution is begun." Sands, 502 F.3d at 269 (internal quotation marks and citation omitted); see Commonwealth v. Reid, 77 A.3d 579, 582 (Pa. 2013) (providing trial courts

---

[3] Like double jeopardy, Pennsylvania's compulsory joinder rule is an affirmative defense because a defendant "admits his commission of the act charged, but seeks to justify or excuse it." Commonwealth v. White, 492 A.2d 32, 35 (Pa. Super. Ct. 1986); see Smith v. United States, 568 U.S. 106, 112 (2013) (holding that a criminal defendant has the burden to establish an affirmative defense); United States v. Young, 503 F.2d 1072, 1074 (3d Cir. 1974) (holding that double jeopardy is an "affirmative defense which must be raised properly or may be deemed waived").

with the standard to evaluate whether charges arise from a "single criminal episode" under the compulsory joinder rule); United States v. Rigas, 605 F.3d 194, 204 (3d Cir. 2010) (en banc) (noting that "a court looks to the statutory elements of the crime charged to determine if there is any overlap" to determine if the Double Jeopardy Clause applies (citation omitted)). To impose an obligation on a police officer to consider these defenses would fail to account for the legal complexity inherent in the compulsory joinder inquiry in four ways.

First, the Supreme Court of Pennsylvania has observed that Pennsylvania courts "still struggle over the application of the . . . compulsory joinder rule." Reid, 77 A.3d at 585. Because even courts have difficulty applying the compulsory joinder rule, the doctrine "is not readily discernable to a police officer making arrests." Radich v. Goode, 886 F.2d 1391, 1398 (3d Cir. 1989).

Second, the compulsory joinder rule governs the actions of the prosecutor, not the police officer, in deciding whether the rule bars a later prosecution. See 18 Pa. Cons. Stat. § 110(1)(ii) (providing that a prior prosecution may bar a later one if, among other things, the prior prosecution "was known to the appropriate prosecuting officer at the time of the commencement of the first trial").

Third, the compulsory joinder rule requires a consideration of "whether the offenses present a substantial duplication of issues of fact and law," which in turn requires an examination of what evidence exists to prove the crimes and whether these crimes share common legal elements. Reid, 77 A.3d at 585-86 (emphasis omitted). Prosecutors, not police officers, make these decisions. These prosecutorial decisions are

8

made as part of the pretrial process and include an analysis of the evidence needed to prove each element of each offense charged beyond a reasonable doubt. This decision is significantly different from determining whether probable cause exists to believe a crime was committed and the defendant committed it.[4]

Fourth, the compulsory joinder rule, as an "affirmative defense[,] applies only after the prosecution has begun." Ashcroft v. Free Speech Coal., 535 U.S. 234, 255 (2002). Wagner, not Horner, bears the burden of showing that the affirmative defense applies. See id.; Smith v. United States, 568 U.S. 106, 110 (2013) ("As with other affirmative defenses, the burden is on [the defendant]."). Indeed, even "trial courts generally are under no duty to raise affirmative defenses on behalf of a criminal defendant." Gov't of V.I. v. Lewis, 620 F.3d 359, 370 n.10 (3d Cir. 2010).

In sum, requiring an arresting officer to consider the affirmative defenses of the compulsory joinder rule or the Double Jeopardy Clause "place[s] far more responsibility on police officers than is required." Sands, 502 F.3d at 269; cf. Painter v. Robertson, 185 F.3d 557, 571 n.21 (6th Cir. 1999) (holding that if a "reasonable police officer would conclusively know that an investigative target's behavior is protected by a legally cognizable affirmative defense, that officer lacks a legal foundation to arrest that person

---

[4] The Dissent focuses on whether the prosecution was "maliciously initiated." Dissent Op. at 3. While malice is an element of a malicious prosecution claim, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," Whren v. United States, 517 U.S. 806, 813 (1996), so an allegation of malicious intent in starting criminal proceedings against Wagner would not defeat probable cause. Indeed, the Supreme Court has "been unwilling to entertain Fourth Amendment challenges based on the actual motivation of individual officers." Id.

for that behavior"). Therefore, Wagner's 2013 prosecution for crimes arising from a single theft is ultimately immaterial to whether Horner had facts in 2014 to support the existence of probable cause to arrest Wagner for other thefts.[5]

B

Additionally, our dissenting colleague's assertion that Horner omitted material information from his probable cause affidavit, and had an obligation to disclose facts in it that support an affirmative defense, lacks support. The obligation that the dissent seeks to impose presupposes an officer's awareness of a legal defense and thus an appreciation of the facts relevant to its applicability.[6] As we have held in other cases, police officers generally have no responsibility to determine the applicability of certain affirmative defenses. See, e.g., Sands, 502 F.3d at 269 (observing that "the statute of limitations" is not a "relevant consideration at the time a police officer files charges" because it "is an affirmative defense that is to be ruled upon by a court of competent jurisdiction"). Accordingly, arresting officers have no obligation to be aware of facts supporting complex affirmative defenses such as the compulsory joinder rule or Double Jeopardy, let

---

[5] Because Wagner has failed to plead that Horner lacked probable cause for the later arrest, it is unnecessary to address whether Wagner has adequately pleaded that Horner recklessly omitted a material fact from the probable cause affidavit.

[6] Our dissenting colleague emphasizes that Horner was aware of Wagner's previous conviction for theft at the time Horner presented the affidavit in support of charges associated with other thefts and was obligated to disclose it in the affidavit. As stated previously, because a police officer is not generally expected to consider complex legal defenses such as Pennsylvania's compulsory joinder rule, he is also not expected to know whether the prior conviction could operate as a legal impediment to charges for separate crimes, see Sands, 502 F.3d at 269, and correspondingly that he should disclose facts about it.

10

alone an obligation to disclose these facts.[7]  For similar reasons, and contrary to the

dissent's view, Dissent Op. at 8 n.22, a reasonable neutral magistrate would not need to

know those facts to make a probable-cause determination because (1) they are not

relevant to the existence of probable cause and (2) as explained previously, courts

generally have no duty to raise affirmative defenses.  Lewis, 620 F.3d at 370 n.10.  While

the compulsory joinder rule may be relevant to whether a prosecution may proceed, it has

no bearing on whether the facts show that there was probable cause to believe a crime

was committed.

C

Equally important, Horner is entitled to qualified immunity because the law is not

clearly established that an officer lacks probable cause where the affirmative defenses of

compulsory joinder or Double Jeopardy bars a prosecution.[8]  See District of Columbia v.

Wesby, 138 S. Ct. 577, 589 (2018) ("[O]fficers are entitled to qualified immunity under

§ 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the

---

[7] Indeed, "probable cause may exist where the police do not know of the existence or validity of an exculpatory defense."  Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003).

[8] The dissent suggests Horner did not act reasonably in omitting the details of the previous arrest and so he is not entitled to qualified immunity.  Dissent Op. at 10-11.  We conclude otherwise because Wagner's compulsory joinder defense presents a complex legal inquiry that a reasonable officer would not know and, by extension, would not reasonably be expected to know that he should disclose facts related to the defense in his probable cause affidavit.  Thus, Horner is entitled to qualified immunity.  Garcia v. Does, 779 F.3d 84, 96 (2d Cir. 2015) (granting qualified immunity to officers because if a "defense rests on . . . a legal theory that is not so clearly established . . . it cannot be said that any reasonable officer would understand that an arrest under the circumstances would be unlawful").

11

unlawfulness of their conduct was clearly established at the time." (internal quotation marks and citation omitted)). In fact, the law of this Circuit provides that similarly complicated affirmative defenses, such as necessity, Holman, 564 F.3d at 231, and statutes of limitations, Sands, 502 F.3d at 269, are not subjects an officer must consider when evaluating whether there is probable cause.

By its own terms, the dissent's analysis shows that the purported unlawfulness of Horner's actions was not clearly established. The dissent fails to "identif[y] a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation under similar circumstances" where the compulsory joinder rule or Double Jeopardy strips an arresting officer of probable cause to make an arrest. Wesby, 138 S. Ct. at 591 (internal quotation marks and citation omitted). Thus, at a minimum, qualified immunity would shield Horner from liability. See id. (holding that even if officers "lacked actual probable cause," they were entitled to qualified immunity because they "reasonably but mistakenly conclude[d] that probable cause [wa]s present" (alterations in original) (internal quotation marks and citation omitted)). [9]

---

[9] Because Wagner has not alleged that Horner violated his constitutional rights, there is also no basis to hold the municipal defendants liable. Williams v. West Chester, 891 F.2d 458, 467 (3d Cir. 1989), as amended (Jan. 8, 1990) (holding that municipalities "cannot be vicariously liable under Monell unless one of [their] employees is primarily liable under [§] 1983 itself").

12

III

Because the District Court correctly dismissed Wagner's claims against Horner, we will affirm.[10]

---

[10] Judge McKee concurs in the judgment dubitante. While he acknowledges that the principles of law set forth herein are accurately stated and, as applied to the allegations as pleaded require this result, other allegations could have led to a different outcome. From Judge McKee's point of view, as pleaded, there is a plausible inference that Horner, who knew Wagner from the 2013 arrest, charged him again 2014 vindictively, but what the pleading lacks is any basis upon which to infer that Horner did so knowing, and despite the fact that there is a legal impediment under Pennsylvania law to bringing successive charges that could have been brought as part of an earlier prosecution.

FUENTES, Circuit Judge, *Dissenting*.

Today's Majority Opinion absolves an officer of liability from malicious prosecution despite his awareness and reckless omission of facts defeating probable cause. In my view, Jonathan Wagner has sufficiently pled a malicious prosecution claim because he has plausibly alleged that Officer Richard Horner recklessly omitted material information from his 2014 affidavit in support of probable cause. Because I would vacate the District Court's dismissal of Wagner's complaint and remand for further proceedings, I must respectfully dissent.

**I.**

On January 24, 2013, Jonathan Wagner and Elias Garman were observed taking packages from porches. The officer, Richard Horner, watched as the two got into a van, followed them a short way, and later stopped the van and arrested Wagner and Garman. At the time, there were nineteen items in the van, the majority of which "were sealed packages, opened packages and shipping/order paperwork with people's name[s], address[es] and items purchased."[1] After making the arrests, Officer Horner interviewed Garman. Garman apparently admitted to the theft witnessed by the officer and to "additional thefts" that occurred in nearby neighborhoods.[2] The next day, Officer Horner obtained a search warrant and conducted the search of Garman's van. The search of the van uncovered several important pieces of evidence.

_____

[1] A. 55.
[2] A. 55.

1

According to the Complaint, Officer Horner's investigation was largely completed a few days later, by the end of January. Wagner, who had been charged with one count of theft by unlawful taking, one count of receipt of stolen property, and two counts of conspiracy on the day he was arrested, was not charged with any additional crimes. He pleaded guilty to one count of receiving stolen property on March 26, 2013. He was sentenced to one year of probation.

Officer Horner conducted a second interview of Garman on May 8, 2013. At that time, Garman admitted to stealing other packages with Wagner. Several months later, in January 2014, Officer Horner filed an affidavit of probable cause in support of an arrest warrant for Wagner. Officer Horner did not include information about Wagner's January 2013 arrest in his affidavit, nor did he state that Wagner pleaded guilty to receipt of stolen property in March 2013.

One year after his 2013 arrest, Wagner was charged in a 48-count criminal complaint; for each item that Officer Horner discussed with Garman, Wagner was charged with one count of theft by unlawful taking, one count of receiving stolen property, and two counts of criminal conspiracy. While incarcerated on these charges, Wagner moved to dismiss the criminal charges against him based on Pennsylvania's compulsory joinder and double jeopardy statutes, 18 Pa. Cons. Stat. §§ 109(3) and 110(1)(i), and the concept of double jeopardy. The state court agreed and dismissed the charges under the compulsory joinder rule. Wagner was released from jail after a six-month period of incarceration.

## II.

### A.

2

I must disagree with the Majority's conclusion that Wagner's 2013 prosecution was "ultimately immaterial to whether Horner had facts in 2014 to support the existence of probable cause."[3]

Both state and federal malicious prosecution claims require a plaintiff to allege that the defendant "initiated the proceeding without probable cause."[4] In cases where, as here, the plaintiff was arrested pursuant to an arrest warrant, he must allege that an officer knowingly or recklessly omitted material statements from the affidavit supporting the arrest warrant.[5] For the following reasons, I would find that Wagner has sufficiently alleged that Officer Horner knowingly or recklessly omitted information from his 2014 affidavit that was material to the probable cause determination.

Wagner's complaint alleges that Officer Horner lacked probable cause to arrest him—because all of the evidence supporting the 2014 arrest was based on the 2013 arrest and investigation—but maliciously initiated proceedings against him anyway. In other words, Wagner plausibly alleges that Officer Horner knew of facts triggering application of Pennsylvania's compulsory joinder rule but recklessly omitted those facts from his 2014 affidavit.

Under Pennsylvania's compulsory joinder rule, a subsequent prosecution is prohibited when:

> (1) [T]he former prosecution resulted in an acquittal or conviction; (2) the current prosecution was based on the same

---

[3] Majority Op. 10.

[4] *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007); *see also Corrigan v. Cent. Tax Bureau of Pa., Inc.*, 828 A.2d 502, 505 (Pa. Commw. Ct. 2003).

[5] *Sherwood v. Mulvhill*, 113 F.3d 396, 399 (3d Cir. 1997).

3

criminal conduct or arose from the same criminal episode; (3) the prosecutor in the subsequent trial was aware of the charges before the first trial; and (4) all charges [are] within the same judicial district as the former prosecution.[6]

The statute protects individuals "from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode" and serves to "assure finality without unduly burdening the judicial process by repetitious litigation."[7]

We have explained before that an officer's omission is reckless when he "withholds a fact in his ken that '[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'"[8] In other words, officers must include "evidence if a reasonable person would know that it *could* affect the probable cause determination."[9]

Here, Officer Horner's affidavit in support of probable cause did not include key facts about the case against Wagner. Officer Horner had already arrested Wagner in connection with one of the packages found in Garman's van, and Wagner had already pleaded guilty to that crime, yet Officer Horner omitted this information from his application to the Magistrate. Magistrate judges play a key role in our criminal system,

---

[6] *Commonwealth v. Reid*, 77 A.3d 579, 582 (Pa. 2013).

[7] *Id.* at 583.

[8] *Andrews v. Scuilli*, 853 F.3d 690, 698 (3d Cir. 2017) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). In *Andrews*, we determined that an officer's affidavit in support of probable cause was misleading because he recklessly omitted a witness's identification of a partial license plate that did not match the plaintiff's car and ignored the witness's inconsistent descriptions of the car in question. *Id.* at 703–05.

[9] *Id*. at 698 (emphasis in original).

4

serving as "neutral and detached" checks on officers who are "engaged in the often competitive enterprise of ferreting out crime."[10]  But they cannot perform this vital function if police officers "make unilateral decisions about the materiality of information" or "merely inform the magistrate or judge of inculpatory evidence."[11]  By failing to include this information, Officer Horner deprived the Magistrate of the ability to weigh the allegations against the charges Wagner already faced.  "Any reasonable person would have known" that "the judge would wish to know" [12] such critical information about a case's history.  By omitting the information, then, Officer Horner acted recklessly.

The significant fact here is that Officer Horner was already aware of the information omitted.  Like the District Court, the Majority focuses on the legal complexity of the compulsory joinder rule, and maintains that Officer Horner could not have known that the legal requirements for compulsory joinder were met.  I agree that police officers are not required to undertake legal analyses before initiating criminal proceedings.[13]  And I certainly do not suggest that in all cases involving double jeopardy defenses, an officer

---

[10] *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2005) (quoting *Johnson v. United States*, 333 U.S. 10, 13–14 (1948)).  In *Wilson*, we concluded that some of the officer's omissions from an affidavit—like his failure to mention that an eyewitness did not pick the plaintiff out of a photo array—were reckless while others—like his failure to mention that the photos did not include a listing of each suspect's height and weight—were not.  *Id.* at 788. Ultimately, though, we concluded that the exculpatory evidence omitted from the affidavit was not enough to defeat probable cause given the additional inculpatory evidence suggesting the plaintiff had committed the crime.  *Id.* at 792.

[11] *Id*. at 787.

[12] *Id.* at 788 (quoting *Jacobs*, 986 F.2d at 1235).

[13] *See Sands v. McCormick*, 502 F.3d 263, 269 (3d Cir. 2007) ("A police officer has limited training in the law and requiring him to explore the ramifications of the statute of limitations affirmative defense is too heavy a burden.").

will be liable for mistakenly arresting an individual a second time.  But this does not excuse officers who know of relevant information and intentionally or recklessly withhold it.[14] Such behavior prevents a magistrate judge from engaging in the very legal analysis required to determine whether there is probable cause.  And here the Complaint alleges that Officer Horner was the very officer who arrested Wagner in 2013 and continued to investigate the case. The Complaint further alleges that Officer Horner knew that both prosecutions arose from the same items found in Wagner's co-conspirator's van in January 2013. Wagner has come forward with allegations that, if true, show that Officer Horner was already aware that the conduct charged in the 2014 prosecution was connected to the 2013 prosecution, yet recklessly or intentionally failed to include any information about the 2013 prosecution in his 2014 affidavit.

A fair reading of Wagner's complaint shows that Officer Horner recklessly or intentionally omitted facts known to him—namely, Wagner's prior arrest and conviction—that could have affected the probable cause determination.[15]

**B.**

---

[14] Thus, the Majority's contention that officers "have no obligation to be aware of facts supporting complex affirmative defenses," Majority Op. at 10, is not relevant.  The Complaint fairly alleges that Officer Horner *was* aware of the relevant facts—Wagner's prior prosecution—and chose to keep that information from the Magistrate.

[15] When considering whether an officer's omission was reckless, we ask whether "a reasonable person would know that it *could* affect the probable cause determination," which is "a lower threshold of materiality" than we consider at the second stage of the inquiry. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 471 n.9 (3d Cir. 2016).  But for the reasons that follow, I also conclude that the omission would have been material to the probable cause determination.

Having concluded that Officer Horner recklessly omitted information from the affidavit, I next consider whether a "reconstruct[ed]" affidavit with all material information would have supplied the probable cause required to support Wagner's arrest.[16] I conclude that a reconstructed affidavit would not supply the probable cause needed to support Wagner's second arrest. We have long held that "[i]ndependent exculpatory evidence or substantial evidence . . . that is known by the arresting officers could outweigh the [inculpatory evidence] such that probable cause would not exist."[17]

Here, the evidence allegedly within Officer Horner's knowledge would have shown to the Magistrate that Wagner's two arrests arose from the same factual episode.[18] Because compulsory joinder is a complete defense necessitating dismissal,[19] evidence that the compulsory joinder rule would be triggered by prosecution "outweigh[s]" the inculpatory evidence in this case.[20] Disclosure of Wagner's prior conviction would have indicated to a neutral magistrate, well-versed in Pennsylvania law, that initiating a second prosecution

---

[16] *Id.* at 470. In this case, the District Court analyzed materiality by amending Officer Horner's affidavit to add the following sentences: "I arrested Wagner and filed charges for one count of Theft by Unlawful Taking, one count of Receiving Stolen Property, and two counts of Conspiracy. Wagner subsequently pled guilty to one count of Receiving Stolen Property from the initial charges." A.18.

[17] *Wilson*, 212 F.3d at 790; *see also United States v. James*, 928 F.3d 247, 254 (3d Cir. 2019) (explaining that evidence supporting complete affirmative defenses should be treated in the same was as evidence supporting factual innocence); *Geness v. Cox*, 902 F.3d 344, 357, 357 (3d Cir. 2018) (determining that an officer should disclose information about a defendant that undermines the validity of a confession).

[18] *See* A. 31 (alleging that "[t]he evidence that Officer Horner was relying upon to establish probable cause was based exclusively on the information obtained during the 2013 arrest of Plaintiff").

[19] *See Reid*, 77 A.3d at 582.

[20] *Cf. Wilson*, 212 F.3d at 790.

7

would run afoul of Pennsylvania's compulsory joinder rule. Yet Officer Horner failed to provide the Magistrate Judge with this crucial information. Because Officer Horner's omission of the 2013 arrest and conviction was material to the probable cause inquiry, I would conclude that Wagner has plausibly alleged that Officer Horner initiated a proceeding against him without probable cause.

The Majority contends that an officer should not have to disclose facts relevant to an affirmative defense such as the compulsory joinder rule because officers are generally not expected to consider such defenses. But that misses the mark. I would hold only that where an officer knows of facts that are relevant to a magistrate's decision to issue an arrest warrant and recklessly or maliciously omits those facts from an affidavit in support of probable cause, he can be held liable for that reckless or malicious omission. To hold otherwise would be inconsistent with our longstanding precedent that "a neutral magistrate, not an officer, [must] make the ultimate probable cause determination."[21] Simply put, an officer is not required to weigh the salience of legal defenses before submitting an affidavit in support of probable cause, but he may not recklessly or maliciously refuse to include facts within his knowledge that are material to the decision to issue an arrest warrant.[22]

---

[21] *Dempsey*, 834 F.3d at 471 n.9.

[22] The Majority also states that because police officers have no responsibility to determine the applicability of certain affirmative defenses when conducting arrests, affirmative defenses are irrelevant to magistrate judges as well. *See* Majority Op. at 11. But we have explained that police officers need not determine the applicability of certain affirmative defenses because they "ha[ve] limited training in the law." *Sands*, 502 F.3d at 269. This rationale obviously does not apply to magistrate judges, and we have never before held, as the Majority suggests, that all affirmative defenses are irrelevant to the probable cause determination. *See Holman v. City of York*, 564 F.3d 225, 231 (3d Cir. 2009) ("We do not endorse the District Court's statement that affirmative defenses are 'not a relevant

8

Because I read the complaint as alleging that Officer Horner knew of Wagner's prior conviction and recklessly or maliciously failed to include that information in his subsequent affidavit, I believe Wagner has stated a claim for malicious prosecution based on that omission.

## C.

I must also disagree with the Majority's holding that, even if Officer Horner lacked probable cause, his conduct is protected by the doctrine of qualified immunity. Public officials are entitled to qualified immunity unless the plaintiff alleges a violation of a constitutional right that was "clearly established" at the time of the official's conduct.[23] When we define the right allegedly violated, we must frame it "in light of the specific context of the case, not as a broad general proposition."[24] Ultimately, the dispositive inquiry is whether "it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted."[25] As we have previously stated, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"[26]

Although we must consider the facts in each qualified immunity case "in light of [its] specific context,"[27] it is not necessary for a plaintiff to point to "earlier cases involving

---

consideration'—as we have never so held—but we do conclude that, here, the defense of necessity need not have been considered in the assessment of probable cause for arrest for trespass at the scene.").

[23] *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[24] *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 248 (3d Cir. 2016)

[25] *Saucier*, 533 U.S. at 202.

[26] *L.R.*, 836 F.3d at 241 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

[27] *L.R.,* 836 F.3d at 248.

9

fundamentally similar facts."[28] In our prior cases involving evidence intentionally or recklessly omitted from an affidavit supporting probable cause, we have defined the right in question as "the right to be free from prosecutions on criminal charges that lack probable cause."[29] As explained above, I do not think those cases, which clearly hold that officers cannot omit exculpatory evidence from probable cause affidavits, are meaningfully different from this one, in which Officer Horner is alleged to have clearly disregarded evidence known to him when filing the 2014 affidavit. As the Sixth Circuit pointed out in *Estate of Dietrich v. Burrows*, "[t]he law has been clearly established since at least the Supreme Court's [1925] decision in *Carroll v. United States* . . . that probable cause determinations involve an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.*"[30] Given our substantial case law explaining an officer's duty to disclose information that could affect probable cause, I would find that Officer Horner has not established his entitlement to qualified immunity at this stage.

Unfortunately, today's Majority Opinion licenses any officer to deliberately withhold information in an affidavit for an arrest warrant, even if they know that information would relieve a defendant of criminal liability for his actions. Qualified immunity and related principles of law are intended to shield officers who act reasonably in discharging their duties in good faith. The law is intended as a shield for such officers,

---

[28] *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).
[29] *Andrews*, 853 F.3d at 705 (explaining that "we need not dwell" on the issue of qualified immunity in a case involving reckless omissions because the right to be free from a prosecution lacking in probable case was "grounded in well-settled law").
[30] 167 F.3d 1007, 1012 (6th Cir. 1999) (citing *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

10

not as a sword for officers who, as is alleged here, attempt to wield their authority to maliciously prosecute defendants.

For these reasons, I respectfully disagree with my colleagues and would find that Officer Horner has not shown that he is entitled to qualified immunity and Wagner's allegations—that Officer Horner deliberately omitted material information from the affidavit in order to harass him—should have survived a motion to dismiss.

**III.**

For the above reasons, I respectfully dissent.